JAMES J. McGOVERN, *Ex. vs.* PIERRE G. MORIN *et al.*

DECEMBER 7, 1934.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

RATHBUN, J. This is a bill in equity brought in the name of the executor of the will of Hanora J. Cooper to recover from respondent Morin certain bonds delivered to him by the testatrix. Respondent Morin contended that she gave the bonds to him as a gift *inter vivos.* After hearing in the Superior Court on bill, answer and proof, a decree was entered dismissing the bill and declaring that the bonds were the property of Morin and that he acquired title thereto by reason of a valid gift *inter vivos* made to him by the testatrix in her lifetime. The cause is here on complainant's appeal from said decree.

Mrs. Cooper, who became a widow in 1922, met Morin in 1923. Both were past middle life. He was a single man

of limited means somewhat younger than she. They became close friends. Marriage was a subject of conversation between them but the trial justice did not find that an engagement to marry ever existed. During the last five years of her life their relations, although eminently proper, were of a somewhat confidential nature. However, it does not appear that he took any important part in the management of her business affairs or advised her in reference thereto.

Morin, who was a mechanic, acquired a garage business.

Thereafter at all times he owned one or more automobiles. One of these he used to drive testatrix wherever she desired to go on either business or pleasure.

On August 17, 1932, she was advised by her physician that she should go to a hospital for treatment of a condition which subsequently resulted in her death. The following day, at her request, Morin drove her to the business section of Providence where she went to her safe deposit box in the Rhode Island Hospital Trust Company building and to her broker's office in the Industrial Trust Company building. She also went to the Exchange Branch of the Industrial Trust Company, withdrew money which, at her request, Morin deposited for her in her checking account in the Providence National Bank. Morin did not accompany her while she was transacting business. When she had completed her business, he started to drive her to her home. While in the automobile, which was proceeding toward her home, she made the gift to Morin of the eighteen bonds in question. She had removed from them the coupons which would next mature. He immediately drove to the Washington Park Branch of the Industrial Trust Company where he rented a safe deposit box, and, after completing the details and obtaining a receipt for payment of the rent therefor, asked that Mrs. Cooper's name be inserted in the lease. He then took the lease out to the automobile, where Mrs. Cooper was waiting, and obtained her signature to the same. He then drove her to her home and while there

make a list of the bonds in question and then returned to said Washington Park Branch and deposited them in the safe deposit box. When he rented the box, he obtained both keys and always kept them in his possession. No one but himself had access to the box.

The following day Mrs. Cooper went to a hospital where she remained until September 23, 1932, and then returned. to her home. On October 7, pursuant to her instructions then given to her nurse, her attorney, James J. McGovern, was called to her home where he drafted her will which she executed. She died on the following day.

Under her will Timothy A. Dailey and John Francis Dailey each received legacies of $2,500. The other complainants, Martin M., Joseph A., Alexander P. Murphy and Marguerite Gallagher each received legacies of $300. The respondent Morin was given the house where she lived and its contents together with the residuary estate. An appeal taken by the complainants from the probate of said will is now pending. From the inventory of Mrs. Cooper's estate it appears that she had personal estate at the time of her death inventoried at $28,899.61, about one half of which consisted of money on deposit in various banks. In addition she owned the above-mentioned real estate free from encumbrances.

As the cause was tried by both parties on the theory that a confidential relationship existed between Morin and Mrs. Cooper, we will assume that such a relationship did exist.

In *Union Trust Co.* v. *Davies*, 53 R. I. 63, we stated as follows: "It is elementary that a person occupying a position of trust and confidence has the burden of showing that no advantage was taken of the donor. It is well established that a person who sets up a gift has the burden of proving that the gift was actually made."

Mrs. Cooper lived alone and for sometime prior to August 18, 1932, the date of the alleged gift, Morin, besides driving his automobile to take Mrs. Cooper wherever she

desired to go, was in the habit of doing work around her house, such as caring for the furnace, hedge and sidewalk and making minor repairs on the house. He wrote many letters at her dictation, wrote rent receipts and made bank deposits for her. The trial justice found, however, that: "There is no testimony that he ever advised or sought to advise her about her business affairs or investments, or that she ever sought his advice on such matters" and that "she handled her own business affairs with competency and discretion throughout all the times involved in this case."

Mrs. Cooper had no children and it is clear that she was not on intimate terms with her relations. The trial justice found that there was no testimony tending to show that Morin "caused this apparent estrangement or that he ever disparaged her relations to her."

Mrs. Day, who nursed Mrs. Cooper, testified that on different occasions she was told by Mrs. Cooper that she had given the bonds to Morin;—whom she referred to as "Gregory"—that on one occasion she said he was a very dear friend of hers and the only one who had been kind to her for a long time, and that "she said that if she should die, he was going to get all of her money, besides 'I have given him bonds.'" Mrs. Day received a gift of $500 and certain jewelry under the will.

When Mr. McGovern came to draw the will Mrs. Cooper told him that she had given to Morin certain bonds for which she paid approximately $8,000. Mr. McGovern inquired of her as to the details of and reasons for the gift. He also made similar inquiries of Morin and later brought him into the presence of Mrs. Cooper and there made further inquiries as to the alleged gift. It is evident that Mr. McGovern was then well satisfied that Mrs. Cooper had made a valid gift of the bonds to Morin.

In his rescript the trial justice stated as follows: "Mr. McGovern's testimony, clear and not shaken and coming as it does from a lawyer of his standing and character, the court accepts as true. The court finds, as a fact, that on

October 7, 1932, at the time of the interview between Mrs. Cooper and Mr. McGovern, and during the entire time of such interview, Mrs. Cooper was in a rational state of mind and that she voluntarily made the statements to Mr. McGovern in respect to the gifts of the bonds to Morin, to which he, Mr. McGovern, testified."

If Mrs. Cooper, when she delivered the bonds to Morin, intended to vest an absolute title thereto in Morin, the gift was not rendered invalid by his act in placing them in a safe deposit box which he had rented in their joint names. *Beaumont* v. *Beaumont*, 152 Fed. 55.

The trial justice found that the gift was not obtained by undue influence and that there was no evidence tending to show such influence; and that "it is clearly established that Hanora J. Cooper, on August 18, 1932, made delivery of the securities in question to Pierre G. Morin with intent to vest in him by way of gift the absolute title to said securities, and that she parted definitely with control of said securities at that time and never resumed, or attempted to resume, control of any character over said securities thereafter, but that they remained thereafter in the exclusive possession and control of Pierre G. Morin."

We find no reason to disagree with said justice in these findings, and we find no error in the rulings complained of.

The appeal is denied and dismissed, the decree appealed from is affirmed and the cause is remanded to the Superior Court for further proceedings.

*George Hurley, Walter V. Connly, Hartigan, Mullen & Roberts*, for complainant.

*Comstock & Canning, Edward M. Brennan, George A. Johnson*, for respondents.