JOHN G. REYNOLDS *et al., Ex. vs.* JOHN O. STEVENS.

FEBRUARY 28, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J.    This is a bill in equity brought to establish a constructive trust in certain specific funds in the respondent's possession.  The cause was heard on bill, answer, replication and proof by a justice of the superior court, who granted the relief prayed for.  A decree was accordingly entered and the respondent then appealed to this court.

The evidence shows that the complainants are the executors of the will of Henry J. Reynolds, who died in Providence on November 15, 1939. At the time of his death the testator was ninety years old and unmarried. For a number of years he had lived alone on the second floor of his two-family house in Providence. The respondent, who was about thirty-seven years of age, and the testator had been friends for many years. About May 30, 1939 the respondent and his family moved into the lower tenement of this house under an alleged agreement with the testator by which the respondent was to occupy that portion of the house rent free, and in addition was to receive $14 a week from the testator for such care, nursing and other personal services as the latter might require. Thereafter the respondent did perform various services for the testator, and apparently was paid substantially at the rate of $14 a week.

Claiming, however, that he was not fully compensated for additional and extra services which he rendered the testator, and for other work which he had previously done at the latter's request, the respondent, after the former's death, filed a claim against his estate for $2134. Two other claims, in the total sum of $3127, for nursing and care of the testator covering a long period, were also filed against the estate by respondent's wife and by his aunt.

Shortly before his death the testator was too ill and too weak to attend to his personal affairs. Under these circumstances, on October 9, 1939, he gave the respondent a power of attorney which authorized him to draw checks on the testator's bank account. From that date until the testator's death, the respondent drew a number of checks under that power of attorney, some to pay the testator's current bills, and others to his own order. The balance of the money received by the respondent on two of the latter checks, viz., $1100, which sum was traced to his possession in a safe deposit box, is the subject of the controversy in the instant

cause. One of these checks dated November 4, 1939 was for $950; the other check dated November 14, 1939 was for $657.39. The respondent contends that he was given this money by the testator as a gift. The complainants, on the other hand, maintain that the respondent, while in a fiduciary relation to the testator, abused the confidence reposed in him and converted the money to his own use.

The respondent's testimony as to the $950 check dated November 4 is that the testator gave him the amount of that check as an outright gift, and that on November 13 he used said check to open a savings account in his own name in the Mechanics National Bank. As to the check for $657.39 dated November 14, the day before the testator's death, the respondent testified, in substance, that he closed the testator's checking account by drawing such check and that he put the money in a checking account of his own in the above-named bank at the testator's direction. He further gave evidence that this arrangement was made because the testator was disturbed by the fact that his nephew John Reynolds had suggested appointing a guardian over him and that he did not want a guardian to use any of his money.

The respondent testified that it was the testator's original intention to use such money, although in respondent's name, to pay bills if no guardian were appointed, but that when he, the respondent, returned after transferring the account he had the following conversation with the testator: "He told me after I came in, he said: 'John, is that money in your name?' I said: 'Yes' And he said: 'John, that money is yours.' . . . He told me definitely to keep that money. He said possession was nine points of the law; he said he knew I would do as I was told."

On November 20 respondent closed the above savings and checking accounts in the Mechanics National Bank, which together then amounted to $1100, by drawing out such sum

and eventually he placed the money which he thus received in a safe deposit box in the Industrial Safe Deposit Company in his own name, with right of access thereto in his wife. The respondent explained such conduct on the ground of fear that the complainants would attach and take the money away from him.

It appears from the testimony that on November 22 one of the complainants, in company with an attorney, interviewed the respondent concerning the money in question. The respondent admitted that he first told them that he did not know what had become of the money, as the testator had told him "not to tell anybody; he said it wasn't anybody's business". The respondent also admitted that later in this conversation, after being informed that the Mechanics National Bank photographed its checks, he said that he was not then "on the stand, and the only way to settle a matter like that would be in court." He also told them that the money was deposited "in a bank outside of the city." and that he said this because the testator told him "that what he did with his money was nobody's business, he didn't have to account for it".

It does not seem necessary to make further reference herein to the evidence in detail other than to note that the respondent attempted to explain the disappearance of the original check of November 4 for $950 by testifying, in a confused and contradictory manner, that it was probably burned by him with other papers at the testator's direction the day before he died. The credibility of respondent's testimony and of the supporting testimony of his wife and of his aunt, all of whom, as we have indicated, have filed substantial claims against the testator's estate, is of vital importance in this cause. The trial justice, in a carefully prepared rescript in which he reviews the evidence, first characterized the respondent's story as "most improbable" and then held that the two checks in question were issued by

the respondent "without the knowledge of and in the absence of any authority from his principal, and in violation of the confidential relationship then existing between them". We have examined the evidence and exhibits in this cause and find nothing which would warrant us in disturbing the findings of fact of the trial justice.

One who sets up a gift as the reason for retaining the property of another has the burden of proving such gift by satisfactory evidence. *Stiness* v. *Brennan et al.*, 51 R. I. 284. This rule is especially applicable where the alleged donee is in a position of trust and confidence. *Oldham* v. *Oldham,* 58 R. I. 268. In the instant cause the trial justice found that the respondent had failed to prove his claim of a gift by satisfactory evidence. We agree with that conclusion.

The respondent makes the further contention that the complainants should have proceeded at law and not in equity, as this cause involves merely a claim for money. This contention is unsound. A breach of trust by a fiduciary, who claims funds in his control by way of a gift, ordinarily furnishes good ground for the intervention of equity. Also, in the instant cause, the complainants are seeking to impose a constructive trust in their favor on a specific *res,* namely, the money which represents the remaining proceeds of the two checks in question, which *res* complainants have followed into the safe deposit box in question, which stands in the name of the respondent. This is a recognized ground of jurisdiction in equity. See 21 C. J. 115-117; 3 Scott on Trusts, 2336, § 468.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Taft & Beane, James L. Taft,* for complainants.

*Morgan & Morgan, for respondents.*