Thomas W. Pearlman *et al., Co-Administrators vs.*
Catherine Campaloni.

APRIL 15, 1963.

Present: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

Roberts, J. This bill in equity was brought by the co-administrators of the estate of Giacinta Pitassi, late of Providence, deceased, to determine the ownership of certain monies alleged to be in the possession of the respondent. The cause was heard by a justice of the superior court, who gave decision for the respondent and thereafter entered a decree denying and dismissing the bill of complaint. From that decree the complainants have prosecuted an appeal to this court. In the course of these proceedings it was agreed that the name of the respondent had been misspelled in the original process and that the correct spelling thereof is Campellone.

It is not disputed that for some time prior to November 1958 Giacinta Pitassi, hereinafter referred to as the donor, and her husband Gaetano Pitassi maintained a joint account in the Industrial National Bank. The amount on deposit in that account as of November 3, 1958 was $3,090.68. Neither is it disputed that on November 3, 1958 the money on deposit in this joint account was withdrawn in full, the withdrawal order having been executed by the husband, Gaetano Pitassi.

It appears from the evidence that respondent Catherine Campellone, hereinafter referred to as the donee, accompanied Gaetano Pitassi to the bank on November 3, 1958, where he executed the withdrawal order for the full amount on deposit and gave the money thus withdrawn to the donee. She thereupon took the money she had thus received from Gaetano and deposited it in a branch of the Columbus National Bank in an account opened in her own name.

It appears from the evidence that the donee and donor had been neighbors and friends for some thirty-five years. In 1958 the donor, who prior to that time had been in good health, became ill and required hospitalization. During her stay at the hospital she was visited regularly by the donee. The donee testified that during one of those visits on a Sunday afternoon, the donor summoned her husband Gaetano to come into the room from a corridor, referring to him as "Gusty." She thereupon told her husband that he was to go to the bank, withdraw the money on deposit, and give it to the donee. According to the donee, the donor said that she wanted the donee to have the money to "take care of my funeral and take care of Gusty's clothes for the funeral. The rest is for you."

The donee in her testimony conceded that she had accompanied Gusty to the bank, that he had given her the money, and that she had deposited it in Columbus National Bank in her own name. It appears that some three weeks after

this incident the donor was discharged from the hospital. After she had been home about a week, she was again taken ill and returned to the hospital where she died on December 1, a day or two after her admission. It is not disputed that the donee purchased some clothing for Gusty to use in attending the donor's funeral and that she paid the funeral expenses.

The donee's version of the discussion at the hospital concerning the money on deposit was corroborated by Mary Sweeney, who testified that she had been friendly with both the donee and the donor for some seventeen years. According to her testimony she was visiting the donor at the hospital at the time that the donor called her husband into the room and directed him to go to the bank, withdraw the money, and give it to the donee. According to this witness the donor told the donee that she was to use the money to pay funeral expenses, buy something for Gusty, and the "rest would belong to her."

Emilio Campellone, a brother-in-law of the donee, also testified as to the circumstances under which the money was transferred to the donee. While his testimony, as it appears in the record, tends to confirm the donee's version of the circumstances, it is somewhat ambiguous as to the care that the donee was to give to Gusty. There was also read into the record a statement by Frances Lenano, it being stipulated that had she been in court she would have testified in that manner. It does not appear, however, that this statement contradicts the donee's version of the circumstances under which the money was transferred to the donee or the use that was to be made of it.

There is evidence in the record that tends to contradict the testimony of the donee relating to the use to which she was to put the money under the direction of the donor. Vincent Pitassi, a brother of the donor's husband, testified that shortly after the money had been transferred the donee had

come to his home in response to his request for her to do so. He testified that while there she showed him a bankbook in her name and told him that she was going to use the money to take care of "The two of them." His wife, Yvonne Pitassi, also testified concerning this visit with the donee who, she stated, said that she had been given the money to bury the donor and to keep the rest to bury Gusty. This testimony was denied by the donee who, conceding that she had made the visit above referred to, testified that she had told these witnesses that the money had been given her to bury the donor and the remainder was to be hers.

The complainants base their demand for a return of the fund on their contention that the donor in causing the transfer of the money intended to provide for the disposition thereof after her death and that she did not intend to make a complete gift inter vivos of that money to the donee. The donee, on the other hand, argues that the transaction constituted a completed gift of the money to her at that time. It is the settled law in this state that one who claims to have acquired the property of another by way of gift has the burden of proving such gift by satisfactory evidence. *Carr v. MacDonald,* 70 R. I. 65, 73; *McGovern v. Morin,* 54 R. I. 481. In the instant case the donee has the burden of establishing the requisite donative intent in the donor, that is, that she intended to make a gift in praesenti by divesting herself of the ownership and control of the fund and vesting such ownership and control in the donee. See *Tabor v. Tabor,* 73 R. I. 491.

The complainants contend, as we understand them, that the donee has failed to establish that the donor intended to make a gift in praesenti and in support of that argument direct our attention to *Reynolds v. Stevens,* 66 R. I. 220. In that case it was held that a donee had failed to establish the requisite donative intent on the part of the alleged donor. We are unable, however, to perceive that the *Reynolds*

case is controlling on the determination of that issue in the instant case. This court in that case found that no error inhered in the decision of the trial justice that the burden of proof had not been sustained where he found that the donee's testimony as to the making of the gift was "most improbable" and where the donee had himself withdrawn the money on deposit under a power of attorney that had been given him by the owner of the account.

In this case there is a conflict in the evidence on the question of whether at the time of the transfer of the deposit the donor directed that such portion of the fund on deposit as remained after her funeral expenses had been paid was to be used to take care of her husband or was to become the property of the donee. This conflict goes to the basic issue of whether an absolute gift in praesenti of the fund was intended or whether the donor was attempting to direct a disposition of the fund after her death. The trial justice in his decision specifically refers to the contradictory nature of evidence adduced on this point. He states clearly that a determination of whether the requisite donative intent existed must turn upon whether the testimony for complainants or the donee is to be believed. In short, it is our opinion that the trial justice very properly dealt with this case as one involving a conflict of evidence on the controlling issue.

This court has long adhered to the rule that where a trial justice sitting in equity makes a finding of fact on conflicting evidence, a decision based upon that finding will not be set aside unless it is clearly wrong. *Walther* v. *McOsker*, 87 R. I. 386. The decision clearly reveals that the trial justice passed upon the evidence in the light of the controlling issue, that being the existence of the donative intent that would be necessary to sustain the donee's claim of the gift inter vivos of the fund withdrawn from deposit. He applied the correct rule of law to the pertinent facts, stating that the existence of such a donative intent is not negatived nec-

essarily by the imposition of some condition subsequent. It is well settled that one may make an absolute gift in praesenti even though it be made subject to some condition subsequent.

The trial justice went on to evaluate the evidence in the light of the applicable rule of law and in that regard noted that the evidence of a completed delivery of the fund withdrawn from deposit was not contradicted. He proceeded to conclude that the donee had established the existence of the requisite donative intent in the donor. This latter finding was clearly made by him on the basis of the conflicting evidence that had been adduced on that issue. In making this finding he had the advantage of observing the conduct of the witnesses and the manner in which they testified and of basing his conclusion as to credibility on such observations. In those circumstances we cannot say that the decision he made on the issue of the donative intent was clearly wrong.

The complainants' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

FROST, J., did not participate in the decision.

*Thomas W. Pearlman, William Y. Chaika,* for complainants.

*Arthur N. Votolato, Alton W. Wiley,* for respondent.