DECISION
This matter was heard by the Court, sitting without a jury, on June 30, 1999 and July 1, 1999. The plaintiff, Lois J. Bourque (Bourque), in her capacity as Administratrix DBNCTA of the estate of Margaret Murray (Murray, or decedent), filed the instant equitable action to impose a constructive trust upon certain real and personal property obtained by the defendant, Mary E. Goodwin (Goodwin). This Court heard testimony and received evidence relative to the parties' rights in the decedent's property. The facts insofar as pertinent follow.
 I. Facts/Travel
This case stems from a friendship formed in Ireland between two women who eventually made their home in Rhode Island. The two women, the mother of Murray and the grandmother of Goodwin, maintained this close friendship while settled in West Warwick and Pawtucket, respectively. The Murray and Goodwin families remained friendly with each subsequent generation and frequently spent vacations and holidays with one another. The decedent, one of eight children in the Murray household, never married and lived in the family homestead at 63 Highland Street in West Warwick her entire life with her twin sister, Alice, who eventually, predeceased her by approximately two years. Having no children of their own, the decedent and her siblings treated Goodwin and her sister "like the children they never had."
On May 19, 1988, Murray duly executed her last will and testament naming the Goodwin sisters as co-executrix. Notwithstanding several minor monetary bequests to various friends of Murray and Roman Catholic charities, Murray devised the residual and remainder of her estate to the two Goodwin sisters.
On September 30, 1988, a power of attorney was given to Goodwin on behalf of the elderly Murray twins. At the time of this appointment, the Murray twins were 84 years old and the decedent was going into the hospital for surgery while her twin was suffering from a condition causing blindness. Goodwin alleges that Murray chose her to this appointment because she [Murray] had known me all my life, we had a very close relationship. Our families were very close through the generations. Goodwin further alleges that Murray told her "to take care of it for me."
While Goodwin was exercising her appointment, the Murray twins were receiving income from the following sources: (1) interest from various bank CDs, (2) Social Security checks, (3) bond income from John Hancock annuity, (3) dividend from Mobile Oil stock each quarter, and (4) rent income from the duplex house in which they owned. In accord with Goodwin's appointment, she handled all of the Murray sisters' financial affairs, including utility bills, salaries for the household help primarily handy man, gardener Antonio Mellow, income taxes, and medical expenses. Additionally, the Murray twins held the following assets at the time of Goodwin's appointment: (5) the home located at 63 Highland Street in West Warwick, (6) six accounts at Fleet Bank, including four CD's, two five-year CD's and two one-year CD's, a money market account, and a checking account, (7) 1,376 shares of Mobil Corporation stock, and (8) a life insurance policy with John Hancock life insurance, issued the year of Murray's birth in 1905, and naming her twin sister as beneficiary.
Murray's twin sister, Alice died May 20, 1990. The transactions forming the subject matter of the complaint take place within the time just prior to the twin's death and Murray's own death in 1992. Bourque contends that Goodwin abused her position as a fiduciary under the power of attorney appointment by transfering assets consisting of: (1) the accounts at Fleet Bank, (2) the shares of Mobil stock, (3) the home in West Warwick, and (4) the proceeds from the life insurance policy into her own name prior to the death of Murray. Each transaction will be discussed in turn.
Murray and Alice held the accounts at Fleet bank jointly. While Goodwin exercised her appointment as power of attorney, she frequently signed checks for the Murray sisters. Goodwin testified that Murray was worried about "somebody opening her mail" so the bank statements were subsequently sent to Goodwin's home. Goodwin also testified that once a month she reviewed these bank statements with Murray. Goodwin further testified that after the death of Alice, Murray instructed her in July of 1990 to "[p]ut your name on the [bank accounts], because Alice is no longer here . . . I want you to have them now because there are so many people around here, and they are asking me questions, and they are telling me what I should do with my property and so forth." Bourque presents evidence of a check order with Goodwin's name appearing on it in April of 1990, just prior to the death of Alice Murray. When questioned whether or not she had ordered these new checks with her own name on them prior to the date of Alice's death, Goodwin replied that she could not remember.
Goodwin further testified that in approximately October of 1990, the entire amount in these accounts were given to her at Murray's insistence, to use in the construction of an addition onto Goodwin's property. Goodwin claims that Murray told her to "use some of this money, because you are going to get it eventually anyhow. So, you may as well use it instead of taking out a mortgage on your house to do that . . . [a]nd . . . If I want to go there to live, you'll have the facilities." Goodwin also insisted that Murray did not exercise any control over the money "[b]ecause she kept saying she wasn't going to last long and she wanted to get that out of the way."
Goodwin testified that in November or December of 1990, Murray gave her shares in the Mobile stock to Goodwin and her sister "in appreciation for all we had done for her and Alice." Bourque makes known to the Court that no one else was present to witness this alleged gift except for Goodwin and her sister, and further, that the amount of shares transferred in the stock certificate was not filled in until a later date. Goodwin retorts that the number should have been there and that she told Murray exactly what document it was that she was signing.
Goodwin testified that after Alice Murray died, in June of 1990, the decedent had a deed prepared with respect to the property in West Warwick, in which she added Goodwin's name as a joint tenant. Goodwin further alleged that Murray "was getting a lot of pressure to leave the house to [Mello] . . . [s]o, she thought I should have my name on it, so if they wanted to get the house, they would have to deal with me." Approximately one year later, on August 22, 1991, Murray arranged to put her employee, Mello's name on the deed so that he would have rights in one half of the house and the Goodwin sisters would retain the other half. Bourque also proffers evidence of an agreement between Mello and Murray in which in consideration of weekly payments per week and the conveyance of one-half of decedent's domicile, Mello agreed not to file any claim against the estate of Margaret Murray for services rendered on her behalf Mello has since sold his one half interest in the home to Bourque, for $5,000.
Goodwin testified that Alice Murray, the twin sister of decedent, was the named beneficiary on the life insurance policy issued in 1905. She further states that on March 21, 1990, the beneficiary designation changed from Alice to her own name. Although she initially testified that Murray had her change the beneficiary designation after Alice's death on May 20, 1990, she then states that she had the dates confused and that Murray had made the beneficiary change just prior to Alice's death.
On October 6, 1991, Murray duly executed a second will which named Father Sean Maher as executor of her estate and designated Mello and Bourque as residual beneficiaries in her estate. Murray also bequest various sums to Roman Catholic charities in this will as well as additional bequests to relations of Bourque. Bourque testified that Murray requested Father Maher to be her lawyer (which he declined), and he in turn, asked Bourque if she knew a lawyer who would be available to speak with Murray about the state of her affairs. Goodwin never knew about the execution of this second will by Murray. Murray died April 3, 1992 and this will was admitted to the Probate Court of West Warwick on August 5, 1992. As executor of the estate of Murray, Maher paid for the burial expenses of Murray.
 II. The Constructive Trust
Bourque requests that this Court impose a constructive trust to return the assets obtained by Goodwin to the designated devisees according to the terms of Murray's 1991 will. A constructive trust is imposed by operation of law as a remedy to redress a wrong or prevent an unjust enrichment. The party requesting the imposition of a constructive trust must establish by clear and convincing evidence the existence of fraud or breach of a fiduciary duty. Curato v. Brain, 715 A.2d 631, 634 (R.I. 1998).
Bourque bears the burden of proving by clear and convincing evidence (1) the existence of a fiduciary relationship between Murray and Goodwin and (2) either a breach of some promise or an act involving fraud that occurred as a result of this confidential association. Clark v. Bowler, 623 A.2d 27, 29 (R.I. 1993). The Court finds that there was ample evidence presented which established the existence of a fiduciary relationship based upon a great deal of trust and confidence Murray placed in Goodwin. However, Bourque fails to satisfy the second element by failing to show an actual breach or fraud occurring as a result of this confidential association. Although Bourque offers instances in which Goodwin's exact recollection and grasp of facts seem questionable, she failed to offer any evidence which is dispositive of whether Goodwin actually acted fraudulently. Even though Goodwin ordered checks from Fleet Bank in her name prior to Alice's death and changed the beneficiary designation on the life insurance policy prior to her death also, this evidence does not rise to the standard necessary to persuade the court that Goodwin was acting in violation of her relationship with Murray. In fact, Alice Murray was bedridden and suffering from a variety of ailments at the time of her passing; it may be inferred that Goodwin was making premature arrangements for the inevitable.
Bourque further alleges that Goodwin failed to prove that decedent made an actual gift of the Mobil stock to her. Bourque contends that this gift was improper and should therefore revert to the estate of Murray. To determine whether the requisite donative intent existed, the court must turn to whether the testimony for the donee is to be believed. Pearlman v. Campaloni,190 A.2d 7, 9, 96 R.I. 145, 148 (1963). The donee has the burden of establishing the requisite donative intent in the donor, that is, that Murray intended to make a gift in praesenti by divesting herself of the ownership and control of the stock and vesting such ownership and control in Goodwin. See Id. One who claims to have acquired the property of another by way of gift has the burden of proving such gift by satisfactory evidence. Goodwin testified that Murray gifted this stock to her as a Christmas gift that year and in appreciation for all that the Goodwin sisters did for the Murray sisters.
Notwithstanding the fact that the court does find Goodwin's testimony credible, it should also be noted that under the first will in 1988, Goodwin; as residual beneficiary, would have inherited the Mobil stock. The apparent gift to Goodwin of this stock took place in December of 1990. In 1991 when Murray executed her second will, the Mobil stock was devised to two priests and to Bourque. The only evidence on record that demonstrates an inconsistency in the relationship between Murray and Goodwin occurs on the face of her 1991 will. Although Murray was weak in body, her mental capacity was never in question. Yet, it is significant to note that Murray not only bequests one third of her Mobile stock to Bourque, but also one-half of her residuary estate; a generous amount for a friendship of less than three years. Further, two of Bourque's relations are also named devisees in the will and Bourque also purchased Mello's one-half interest in the West Warwick property for the modest sum of $5,000.
The Court finds that the plaintiff has not met her burden in establishing a constructive trust by clear and convincing evidence. She has not shown that defendant, Mary Goodwin has committed a fraud in any way, either actual or constructive, and therefore judgment shall enter for the defendant.
Counsel for the defendant shall prepare a judgment for entry in accordance with this Decision.