SAMUEL L. TABOR, *Adm'r. vs.* J. EARLE TABOR.

MARCH 10, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker and Condon, JJ.

CONDON, J.   This is a bill in equity to establish ownership of a joint bank account made payable to Mabel A. Tabor or J. Earle Tabor or to the survivor.   The first named depositor has deceased.   The complainant is the administrator of her estate and the respondent is the surviving depositor.   Complainant and respondent are respectively the surviving husband and son of the deceased.   The cause was heard in the superior court, and at the conclusion of the evidence the trial justice denied and dismissed the bill. A decree, containing certain findings of fact to which reference will be hereinafter made, was entered in accordance with that decision.   Complainant has duly appealed from that decree to this court.

For reasons of appeal he states that such decree is contrary to the law, contrary to the evidence, and contrary to the law and the evidence and the weight thereof. He argues that the trial justice erred in placing upon him the burden of showing by a preponderance of the evidence that the account belonged to the deceased's estate. He contends that on the contrary the law places the burden upon the respondent to prove that the deceased made a gift of the account to him to take effect in her lifetime.

Respondent, in answer to those contentions, argues that the complainant has ignored the findings of fact in the decree which show that respondent proved a gift to the satisfaction of the trial justice according to law. In other words, as we understand the respondent, he concedes that he had the burden to prove that "Mabel A. Tabor did make a valid and completed gift inter vivos to respondent of said bank book" as he alleged in paragraph (6) of his answer.

The law generally in cases of this kind is well settled in this state. *Peoples Savings Bank* v. *Rynn*, 57 R. I. 411; *Weber* v. *Harkins*, 65 R. I. 53. In the latter case, at page 59, the principle was stated as follows: "The burden of establishing a gift *inter vivos* is upon a claimant; and he must establish that the donor intended, *in praesenti*, to divest himself of the exclusive ownership and control over the subject-matter of the alleged gift and to vest such ownership and control jointly in the claimant." And we said in the *Peoples Savings Bank* case, at page 423, with perhaps a little more particularity: "We must keep constantly in mind, in the determination of a case of the kind before us, that the party asserting a right to the deposit, as survivor of the other despositor, who originally opened the account and whose money only was deposited in the account, must show a completed gift of a joint interest in the deposit, and also the intention of the original depositor to make such a gift *in praesenti*." The claimant in each of those cases admitted that the account in question had been opened by the deceased depositor solely with his or

her own money; that none of the claimant's money had thereafter been deposited in such account; and that the deceased alone had made withdrawals therefrom.

In the case at bar the uncontradicted evidence was that Mabel A. Tabor originally opened the account in 1913 in the form in which it was found at her death in January 1945; that the other depositor, J. Earle Tabor, during that period from time to time deposited his own funds in the account and also made withdrawals therefrom solely for his own purposes. In addition there was further evidence that most of the deposits in the account were made by J. Earle Tabor and that the only substantial withdrawals were those made by him. It further appeared from the evidence that the deceased kept the bankbook in a tin box in her own room and that in the presence of a Mrs. Young on July 1, 1944, the day Mabel A. Tabor left her home to go to the hospital, she told the respondent to go to her room and "get the pig skin bag and the tin box, take them home. They are yours." And respondent immediately did so. Thereafter until his mother died at the hospital seven months later he retained the exclusive possession of the book. Mrs. Young also testified to the above effect.

A further piece of evidence tending to prove Mabel A. Tabor's intention to give her son all her interest in her personal effects, including the bankbook in question, is a bill of sale of certain furniture and heirlooms and also "my pig skin bag—tin box and contents . . . ." This bill of sale was drawn by Samuel S. Tourtellot at the direction of Mabel A. Tabor who executed it on October 4, 1940 in his presence. He testified that when he was drawing the bill of sale he asked her if she wanted to enumerate the contents of the bag and the box and she replied that everyone knew what they contained. Respondent also testified that he knew what the bag and the box contained. It further appeared from other evidence that complainant had been estranged from his wife for many years and that

the respondent had always been on very friendly terms with his mother. From such evidence a reasonable inference could be drawn, in connection with all the other evidence, that she wished him to have the bank account and did not desire to die possessed of any interest in it.

Complainant did not testify and he did not present any witnesses to testify as to what was the intention of Mabel A. Tabor in opening the deposit in 1913 in her own name and the name of her son and allowing the deposit to remain in that form continuously until her death. There is no evidence, direct or indirect, that it was done merely for her convenience or that it was done solely for the purpose of effecting a disposition of the account after her death. Complainant also failed to present any evidence to contradict the testimony of J. Earle Tabor and his witnesses that Mabel A. Tabor actually surrendered physical possession of the bankbook to her son when she told him to get the tin box in which the book was kept and to take it and the pigskin bag to his home, saying: "They are yours." Indeed, the only effort the complainant made at the hearing to support his bill with evidence was to try to throw doubt upon the respondent's claim of ownership of the bank account by putting him on the witness stand, under public laws 1939, chapter 705, and trying to impeach him by showing that in a prior suit between respondent and complainant not involving the present issue he testified contrary to the claims he was now making.

In some particulars there appeared to be a variance in respondent's testimony in the instant cause from that given in the prior case, but it also appeared that later in his direct examination by his own counsel he explained such variance. Whether his explanation was sufficient to establish his credibility was a question for the trial justice to determine. He was in a better position to pass upon such question than is this court since he had the benefit of seeing and hearing the respondent testify. In any event, confined to the transcript as we are, the most that

we could say would be whether or not the trial justice, notwithstanding his advantage of seeing and hearing the respondent testify, was clearly wrong in accepting his testimony as true.

■ After carefully reading the transcript and considering the reasons advanced by the complainant in his brief and argument for rejecting the respondent's testimony on various matters in connection with the dealings of himself and his mother with the bank account, we cannot say that the trial justice was clearly wrong in crediting such testimony. That he gave credence to respondent's testimony and found that it proved a gift of the bank account to him *in praesenti* in accordance with the law of this state is apparent from the findings of fact in the decree. It is a familiar principle that a court of equity speaks by decree and it is by appeal from such decree only that the cause comes to this court for our consideration.

The decree appealed from expressly finds, among other things, that J. Earle Tabor exercised dominion over the bank account in question in the lifetime of Mabel A. Tabor by making deposits and withdrawals therefrom; that by virtue of the bill of sale of October 4, 1940 she conveyed all her interest in the account to him; and that on July 1, 1944, just before her departure for the hospital when she delivered the bankbook to the respondent she made a valid gift *inter vivos* to him *in praesenti* of any remaining interest she may have had in and to such account. From our examination of the evidence we cannot say that the trial justice was clearly wrong in finding that the title to such account was in J. Earle Tabor and not in either the estate of Mabel A. Tabor or the complainant, as her administrator.

■ Nor can we say that such findings are otherwise against the law merely because the bankbook was never in the physical possession of J. Earle Tabor until July 1, 1944 but was always up to that time in the possession of Mabel A. Tabor. Possession "is but one piece of

evidence shedding light upon the intention of the parties. When it is clear that the intention of the parties is to create a joint account so that both of the parties have an equal right to draw on the funds, it is immaterial which holds the book." *Marston* v. *Industrial Trust Co.,* 107 A. (R.I.) 88. "Both parties can not hold the book at the same time, and the mere fact that one has possession of it ought not to be conclusive against the rights of the other." *Industrial Trust Co.* v. *Scanlon,* 26 R. I. 228. Nor does the fact that in the case at bar there was a joint order served on the bank to pay dividends solely to Mabel A. Tabor of itself adversely affect the respondent's claim. The uncontradicted evidence was that such arrangement was freely entered into by agreement between her and the respondent.

There is one further observation which ought to be made of the special facts in the instant cause. This is not the usual case where only the donor's money has gone into a joint account payable to the survivor. Here the evidence was that the respondent's own money as well as his mother's had been deposited in the account, and at least in later years his deposits had greatly exceeded those of his mother. On such evidence this cause conceivably could have been determined in respondent's favor on a theory different from that of a gift. However, since the decree has been entered on the theory that a gift was claimed and proved by the respondent, we have considered complainant's appeal on that basis.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Edward F. Dwyer,* for complainant.

*John L. Curran,* for respondent.