Michelle McKINNON

v.

**RHODE ISLAND HOSPITAL TRUST NATIONAL BANK et al.**

No. 96–485–Appeal.

Supreme Court of Rhode Island.

June 15, 1998.

Amelia E. Edwards, Gary Yesser, Providence, for Plaintiff.

Deming E. Sherman, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

**OPINION**

LEDERBERG, Justice.

This case came before the Supreme Court following the entry of a summary judgment in favor of the plaintiff, Michelle McKinnon (McKinnon). McKinnon filed a complaint in Superior Court, alleging that the defendants, Rhode Island Hospital Trust National Bank (Hospital Trust or bank) and its agent Shawn Buckless (Buckless), had wrongfully transferred two state agency bonds held in a Hospital Trust funds management account in the names of McKinnon and her father. The defendants and McKinnon filed motions for summary judgment on one count of McKinnon's eight-count complaint, contending that

this count could be decided as a matter of law under Article 8 of the Uniform Commercial Code (UCC). The Superior Court denied the bank's motion and granted summary judgment in favor of McKinnon on that count. Having concluded that count was dispositive of McKinnon's case, the trial justice entered a final judgment in McKinnon's favor. We reverse.

### Facts and Procedural History

McKinnon's father, John R. Cioci (Cioci), was a client of the Private Bank, a subsidiary of Hospital Trust. Buckless, an administrative account officer in the Private Bank, serviced Cioci's accounts. In 1988, Cioci purchased two bonds (bonds) issued by the Rhode Island Public Building Authority. Each bond had a face value of $100,000 and paid interest on a semiannual basis at the rate of 8.2 percent per annum. Cioci initially held the bonds in a funds management account at the bank, and the interest from the bonds was deposited to Cioci's personal checking account. According to the bank's records, the ownership of the bonds was recorded as "John R. Cioci or Michelle McKinnon Jt Ten WROS."[1]

In 1988, Cioci named Hospital Trust as the trustee of a revocable living trust (1988 revocable trust) executed for the benefit of certain of his grandchildren. Apparently having been advised that the 1988 revocable trust was an improper vehicle for estate tax planning purposes, Cioci executed an irrevocable trust in 1989 (1989 irrevocable trust), again for the benefit of certain of his grandchildren and with Hospital Trust as the trustee. Buckless served as trust officer for the trusts.

On April 13, 1990, Cioci directed Hospital Trust to transfer the bonds from the funds management account into the 1988 revocable trust. Cioci explained to Buckless that he was planning to be out of the country for an extended period and that he did not want the interest from the bonds accruing in his checking account without further investment.

Buckless prepared an "interoffice message" to one Barbara Green of the funds management group, which read, "Mr. John R. Cioci wishes to transfer all his assets from his Funds Management Account Numbers 125330 and 125335 into his trust u/agr./o John R. Cioci, # 3–2504–00–3." The interoffice message was signed by both Cioci and Buckless, and the bonds were subsequently transferred into the 1988 revocable trust in accordance with the instructions in the interoffice message.

Cioci died on September 30, 1990, at which point the bonds were still held by the 1988 revocable trust. After her father's death, McKinnon discovered that the bonds had been transferred into the trust, and when Hospital Trust refused to restore the funds to her, she brought suit in the Superior Court on March 1, 1994.

Both McKinnon and the bank filed motions for summary judgment on count 6 of McKinnon's complaint, arguing that there were no material facts in dispute and that the count could be decided under Article 8 of the Uniform Commercial Code. Count 6 charged:

> "The transactions [the transfer of the bonds] as described are controlled by the Uniform Commercial Code, so called, under the laws of the State of Rhode Island. * * * Pursuant to Article 8 of said statute the defendants were required to obtain the endorsement of the plaintiff prior to any sale or transfer of the bonds. The defendants failed to obtain the endorsement of the plaintiff as an owner of the securities, thereby rendering defendants liable to the plaintiff for her losses resulting from the wrongful transfer."

The motions were heard on February 13, 1996, at which time a justice of the Superior Court granted McKinnon's motion and denied Hospital Trust's motion. On February 29, 1996, the Superior Court entered an order and judgment in favor of McKinnon in

---

1. In describing the bonds in its brief to this Court, Hospital Trust explained that "[t]hese bonds were known as 'DTC' bonds, that is, they were issued in the name of CEDE & Co., as registered owner and nominee for the Depository Trust Company, New York. * * * Hospital Trust purchased these bonds and held them in the Cioci account." There were no certificates representing the bonds.

the sum of $209,270,[2] plus interest from September 30, 1990, and costs. Hospital Trust appealed the final judgment and also petitioned this Court for issuance of a writ of certiorari to address the Superior Court's denial of Hospital Trust's motion for summary judgment. We issued the writ on March 24, 1997, and consolidated the petition with the bank's appeal for briefing and oral argument.

### Standard of Review

This Court's standard for reviewing a grant of summary judgment is well established. Upon review, we apply the same standard as the trial court. *Boucher v. McGovern*, 639 A.2d 1369, 1373 (R.I.1994). Specifically, "we will affirm a summary judgment if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Rotelli v. Catanzaro*, 686 A.2d 91, 93 (R.I.1996). Because an order denying a motion for summary judgment is an interlocutory determination and is not entitled to an appeal of right, we do not generally review such a denial. *Boucher*, 639 A.2d at 1373. In the event we do undertake such review by certiorari, we apply the same standard of review as that applicable to the granting of a motion for summary judgment. *Id.*

### Ownership of the Bonds

In opposing McKinnon's motion for summary judgment, Hospital Trust argued that McKinnon had "no present ownership interest in the bonds" at the time they were transferred into the 1988 revocable trust; therefore, she had no standing to object to the transfer. Hospital Trust contended that McKinnon could not claim an ownership interest in the bonds unless she met the test of *Walther v. McOsker*, 87 R.I. 386, 142 A.2d 128 (1958). Under that test, one seeking to claim a gift of a present interest in a security must show "that the donor intended, in praesenti, to divest herself of the exclusive ownership and control over the subject matter of the alleged gift and to vest such ownership

and control jointly in the alleged donee." *Id.* at 393, 142 A.2d 128, 142 A.2d at 131 (citing *Tabor v. Tabor*, 73 R.I. 491, 493, 57 A.2d 735, 736 (1948)).

At oral argument before this Court, Hospital Trust distinguished the instant case from *Robinson v. Delfino*, 710 A.2d 154. (1998), in which we concluded that "the opening of a joint bank account wherein survivorship rights are specifically provided for is conclusive evidence of the intention to transfer to the survivor an immediate *in praesenti* joint beneficial possessory ownership right in the balance of the account remaining after the death of the depositor, absent evidence of fraud, undue influence, duress, or lack of mental capacity." *Id.*, 710 A.2d at 161. Hospital Trust urged that the application of *Robinson* be limited to bank accounts such as the one at issue in *Robinson*, in which both joint owners had signed signature cards at the bank. Additionally, the bank suggested that *Robinson*, even if applied in the present case, would not afford any assistance to McKinnon's cause, because the bonds had been transferred to the 1988 revocable trust before Cioci died. Hospital Trust suggested that this occurrence rendered this case analogous to an account that has a zero balance at the time the depositor dies.

McKinnon, in contrast, argued that the UCC, specifically G.L.1956 § 6A-8-313, establishes the applicable test for proving her then-present ownership interest in the investment securities, and she maintained that inquiry into other areas of law was unnecessary because she met the test prescribed by the UCC. Section 6A-8-313(1) provides in pertinent part that "[t]ransfer of a security or a limited interest * * * therein to a purchaser occurs * * * (b) [a]t the time the transfer, pledge, or release of an uncertificated security is registered to him or her or a person designated by him or her." According to McKinnon, this test was met when Hospital Trust listed her as an owner of the bonds in its records.

Our construction of the pertinent UCC provisions does not require us to decide whether McKinnon had an ownership inter-

---

2. Because of their tax treatment, the bonds' fair market value was greater than their face value.

est in the bonds at the time Cioci transferred them into the trust. Therefore, we shall assume, without deciding, that McKinnon did have an ownership interest at all times relevant to the events in this case.

## Article 8 of the Uniform Commercial Code

Both parties have referred this Court to authorities from other jurisdictions. McKinnon argued that the Supreme Court of Idaho had decided a case "on all fours" with the one before us. In *Ogilvie v. Idaho Bank & Trust Co.*, 99 Idaho 361, 582 P.2d 215 (1978), a mother and her son held stock certificates as joint tenants. The instruments for the stock showed that they were owned by "L. Katharine Ogilvie & Richard R. Ogilvie." Richard Ogilvie (Richard) later pledged the stock to a third party and forged his mother's signature on the indorsement. After Richard died, Katharine Ogilvie successfully sued to recover the stock. The Supreme Court of Idaho concluded that under the facts of that case, the indorsements of both owners were required in order to effectuate a valid transfer. *Id.* at 219. McKinnon cited similar cases from other jurisdictions for this same proposition, *see, e.g., Foucher v. First Vermont Bank & Trust Co.*, 821 F.Supp. 916 (D.Vt. 1993), and *Selby v. Scott*, 859 S.W.2d 898 (Mo.Ct.App.1993), but in each of those cases the securities were held jointly in the form A and B, not, as in the case before us, A or B. In short, none of the cases cited by the parties appears to coincide with the facts in this case.

The parties also directed this Court to those sections of the Code of Federal Regulations (CFR) that apply to securities issued by the United States Treasury Department. Although these regulations do not apply to the bonds at issue in the present case, they were invoked by the parties for their persuasive appeal. Both parties, not unpredictably, referred to provisions in the voluminous regulations favorable to their respective positions.

McKinnon directed our attention to 31 C.F.R. § 306.11(a)(2) (1997), the default rule of the Treasury Regulations.[3] The section provides that "[s]ecurities will not be registered in the name of one person payable on death to another, or in any form which purports to authorize transfer by less than all the persons named in the registration (or all the survivors)." *Id.* This provision, however, is followed by a footnote warning the unwary that "Transferable Treasury Securities Registered in the Names of Two or More Persons" are treated differently from "United States Savings Bonds in Coownership Form," the latter being "virtually redeemable on demand at the option of either coowner on his signature alone." 31 C.F.R. § 306.11, n. 3.

In opposing the applicability of the C.F.R. section cited by McKinnon, Hospital Trust argued that 31 C.F.R. Pt. 357, entitled "Regulations governing book-entry Treasury bonds, notes and bills," provides the appropriate analogy for analyzing the bonds in this case. Subsection 21 of that section reads in pertinent part:

"*Natural Persons.* A security may be registered in the names of one or two individuals, but only in one of the following forms:

* * *

(2) *Ownership by two individuals—*

* * *

(ii) '*Or' form—'Coownership'.* In the names of two individuals, joined by the word 'or'. A security so registered shall confer on each owner an undivided interest in the security and shall create a conclusive right of survivorship.

*Example:* Robert Woods or Laura Woods. If a security is registered in this form, either coowner may make a transaction request." 31 C.F.R. § 357.21(b).[4]

According to Hospital Trust's argument, if the bonds had been book-entry Treasury bonds rather than state agency bonds, the transfer upon Cioci's signature alone would clearly have been correct and appropriate.

---

**3.** Section 306 of 31 C.F.R. is entitled "General regulations governing U.S. securities."

**4.** Section 357.21(b)(2)(i) of 31 C.F.R. provides the regulations for book-entry Treasury bonds held in the form A and B.

*McKinnon* contended that the added words "Jt Ten WROS" after "John R. Cioci or Michelle McKinnon" distinguished the form of ownership in the present case from that contemplated by the Treasury regulations. The "or" form of ownership under the Treasury regulations creates a conclusive right of survivorship, and we are not persuaded that the express provision for such a right is a meaningful distinction.

Although the Treasury regulations provide an interesting scheme for comparison purposes, it is our opinion that the issue here can be resolved under the clear language of the UCC without resort to any extrajurisdictional authorities. Article 8 of Rhode Island's enactment of the UCC, codified as chapter 8 of title 6A of the General Laws, governs so-called investment securities.[5] Neither party has disputed that Article 8 applies to the bonds in this case.

Section 6A–8–308 governs the transfer of investment securities and provides in pertinent part that

"(4) An 'instruction' is an order to the issuer of an uncertificated security requesting that the transfer, pledge, or release from pledge of the uncertificated security specified therein be registered.

"(5) An instruction originated by an appropriate person is:

(a) A writing signed by an appropriate person; or

(b) A communication to the issuer in any form agreed upon in a writing signed by the issuer and an appropriate person.

\* \* \*

"(7) 'An appropriate person' in subsection (5) means:

(a) For an instruction to transfer or pledge an uncertificated security which is then not subject to a registered pledge, the registered owner \* \* \*."

The interoffice message executed by Buckless and Cioci qualifies as an instruction un-der the UCC, provided that Cioci was "an appropriate person." Hospital Trust argued that Cioci was clearly "an appropriate person," that Article 8 requires by its own terms only the signature of "*an* appropriate person," not "*all* appropriate persons," and that, therefore, the transfer was authorized under the UCC upon Cioci's signature alone. McKinnon, to the contrary, insisted that although Cioci was "an appropriate person," his signature alone was insufficient. Rather, she maintained, her signature was needed in addition to Cioci's because both she and her father were listed as registered owners. McKinnon argued that the signatures of all registered owners are required to effectuate a valid transfer of a security under Article 8, regardless of whether the securities are held in an "and" form or an "or" form.

■ McKinnon's argument must fail, in our opinion. Under our reading of § 6A–8–308, when an investment security is held in the form A or B, Article 8 requires only the signature of *one* owner to transfer the security in its entirety. When two individuals *jointly own* a security and wish to ensure that both their signatures will be required before a transfer may be processed, they can do so by holding the security in the form A and B. Accordingly, Hospital Trust did not violate Article 8 when it transferred the bonds into the 1988 revocable trust at Cioci's sole direction.

■ McKinnon has argued that to read Article 8 as requiring fewer than the signatures of all owners to authorize a transfer would render § 6A–8–308(8)(d) meaningless. Section 6A–8–308(8)(d) provides that "an appropriate person" includes, "[i]f the persons designated are described as more than one person as tenants by the entirety or with right of survivorship and by reason of death all cannot sign, the survivor or survivors." McKinnon contended that this section applied to the bonds and that under its express

---

**5.** An "uncertificated security," like that at issue here, is defined by Article 8 as "a share, participation, or other interest in property or an enterprise of the issuer or an obligation of the issuer which is: (i)[n]ot represented by an instrument and the transfer of which is registered upon books maintained for that purpose by or on be-half of the issuer; (ii)[o]f a type commonly dealt in on securities exchanges or markets; and (iii)[e]ither one of a class or series or by its terms divisible into a class or series of shares, participations, interests, or obligations." G.L.1956 § 6A–8–102(1)(b).

terms, her signature would have been unnecessary only if she had been deceased at the time her father transferred the bonds to the 1988 revocable trust. Her argument would be correct if the bonds had been owned in the form "John R. Cioci and Michelle McKinnon." In the instant case, however, "the persons designated" were not described as "more than one person" but rather as *either* of two people. This subsection of § 8–308 simply does not speak to the facts of the case before us.

Because we have concluded that Article 8 permitted Hospital Trust to transfer the bonds upon the signature of a single registered owner, the trial justice erred as a matter of law in granting summary judgment on count 6 to McKinnon. Moreover, because there were no material issues of fact in dispute on this count of the complaint, the trial justice also erred as a matter of law in denying Hospital Trust's motion for summary judgment on count 6.

Accordingly, we sustain the defendants' appeal and reverse the granting of summary judgment in favor of the plaintiff. We also grant the petition for certiorari and quash the order denying the defendants' motion for summary judgment. The papers in this case may be remanded to the Superior Court with our direction that a summary judgment be entered in favor of the defendants on count 6 of McKinnon's complaint.