John **PERRY**

v.

**JOHNSON & WALES UNIVERSITY.**

No. 98–444–Appeal.

Supreme Court of Rhode Island.

April 17, 2000.

James A. Currier, Providence, Steven P. Maguire, for Plaintiff.

Girard R. Visconti, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on March 8, 2000, pursuant to an order directing the parties to appear and show cause why the issues raised on appeal should not be summarily decided. The plaintiff, John Perry (Perry), has appealed from an order denying his motion for summary judgment and granting the cross-motion for summary judgment of the defendant, Johnson & Wales University (university). After hearing the arguments of counsel for the parties and examining their memoranda, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be summarily decided.

Perry began working for the university on February 15, 1980, as a groundskeeper at an hourly wage. On May 10, 1993, Perry was injured in the course of his employment. He received workers' compensation benefits and was out of work from June 19, 1993, to April 9, 1994. He returned to work, but beginning on November 5, 1994, he left work and again received workers' compensation benefits. Perry was found to be disabled by the Social Security Administration as of November 7, 1994. On February 25, 1995, Perry was discharged by the university.

Perry applied for disability retirement benefits under the university's pension plan, but his claim was denied on the grounds that he had not achieved the requisite years of service to qualify for a disability pension. Perry then filed the present action, seeking compensatory damages for the denial of his claim.[1] The parties filed cross-motions for summary judgment: Perry's motion was denied, while the university's motion was granted. Perry then filed this appeal, seeking our review of the trial justice's decisions on both motions for summary judgment.

 When this Court reviews the grant of a motion for summary judgment, we do so *de novo*, and we apply the same criteria as the trial justice. *Carlson v. Town of Smithfield,* 723 A.2d 1129, 1131 (R.I.1999). We will uphold a trial justice's grant of summary judgment only when "a review of the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law." *Id.* We do not generally review a denial of a motion for summary judgment, but when we do, we apply the same standard of review as that applicable to the granting of such a

---

1. Perry's complaint originally also sought punitive damages. A justice of the Superior Court determined that under the applicable law punitive damages were not available. The justice ordered that portion of the complaint stricken with prejudice, and Perry did not appeal that order.

motion. *McKinnon v. Rhode Island Hospital Trust National Bank,* 713 A.2d 245, 247 (R.I.1998) (citing *Boucher v. Mc-Govern,* 639 A.2d 1369, 1373 (R.I.1994)).

The only disputed issue presented to the trial justice in the cross-motions for summary judgment was whether Perry had sufficient years of service to qualify for a disability pension under the university's pension plan. Under Section 4.4 of the university's plan, an employee is qualified to receive a disability pension only if that employee has been credited with at least fifteen years of service. In Section 1.24 of the plan, a year of service is defined as a "twelve (12)-consecutive-month computation period in which an Employee is credited with one thousand (1,000) or more Hours of Service." That same provision states that the computation period runs from July 1 to June 30 for determining whether an employee has accumulated sufficient hours to be credited with a year of service. The university acknowledged that during the period from July 1, 1980, until June 30, 1993, Perry had sufficient hours to be credited with thirteen years of service. The only dispute was whether Perry should have been credited with two years of service for the fiscal year periods from July 1, 1993, to June 30, 1994, and from July 1, 1994, to June 30, 1995.

The parties agreed that during the 1993–1994 fiscal year, Perry worked at least 533 hours and that during the 1994–1995 fiscal year he worked at least 764 hours. They further agreed that in neither of these years did he work 1,000 hours. The only point of disagreement was whether Perry should have been credited in each of these years with the time that he was not at work but was receiving workers' compensation benefits. This is the single dispositive question that we must answer in this case.

Perry argued that he should be credited with the time during which he was receiving workers' compensation benefits pursuant to Section 1.14(b) of the plan, which expands the definition of "hours of service" as follows:

"Each hour for which an Employee is paid, or entitled to payment, by the Employer on account of *a period of time during which no duties are performed* (irrespective of whether the employment relationship has terminated) *due to* vacation, holiday, illness, *incapacity (including disability)*, layoff, jury duty, involuntary military duty or leave of absence. No more than five hundred and one (501) Hours of Service shall be credited under this subsection for any single continuous period (whether or not such period occurs in a single computation period). Hours of Service under this subsection shall be calculated and credited pursuant to section 2530.200b–2(b) and (c) of the Department of Labor regulations which are incorporated herein by this reference." (Emphases added.)

Perry asserted that when he was receiving workers' compensation benefits he was "entitled to payment by the Employer on account of a period of time during which no duties [were] performed * * * due to * * * incapacity," and therefore he should receive credit under the plan for 501 hours for each of the two fiscal years at issue. If he were given credit for those hours, it is undisputed that he would have been credited with over 1,000 hours of service in each of the last two years of his employment and thus would have achieved the fifteen years necessary to qualify for a disability pension.

This argument was made to the trial justice, who rejected it on the grounds that under this Court's decision in *Kilsey v. Chuck Wagon, Inc.,* 119 R.I. 443, 379 A.2d 919 (1977), payment under workers' compensation is not payment for services rendered. Thus, the trial justice reasoned, Perry could not receive credit for the time during which he received workers' compensation. *Kilsey,* however, does not control the disposition of the case at bar. The issue in *Kilsey* was whether an employee

was eligible to receive workers' compensation benefits. *Id.* at 444, 379 A.2d at 919–20. The holding of that case cannot be relied on to determine the outcome of this case in which we must decide whether an employee is entitled to a disability pension under a private employer's pension plan.

The pension plan at issue is governed by the Employee Retirement Income Security Act (ERISA), chapter 18 of title 29 of the United States Code and the regulations adopted pursuant thereto. State law is completely preempted by ERISA. *Morais v. Central Beverage Corporation Union Employees' Supplemental Retirement Plan*, 167 F.3d 709, 711–12 (1st Cir.1999). When interpreting a pension plan under ERISA, a court must first look to that statute and its applicable regulations. *See Cooke v. Lynn Sand & Stone Co.*, 70 F.3d 201, 204 (1st Cir.1995) (holding that a pertinent regulation would override a contrary plan provision). If the statute and regulations do not dictate the outcome of the dispute, a court must then construe the terms of the plan itself. *Id.* In construing the plan, a court does not rely upon state law but instead must apply federal common law. *Morais*, 167 F.3d at 711. "The relevant federal substantive law includes 'the "common-sense canons of contract interpretation" ' derived from state law." *Id.* at 712 (quoting *Rodriguez–Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 585 (1st Cir.1993)). These canons include the basic rule that "contracts containing unambiguous language must be construed according to their plain and natural meaning." *Morais*, 167 F.3d at 712 (quoting *Smart v. Gillette Co. Long–Term Disability Plan*, 70 F.3d 173, 178 (1st Cir.1995)).

At oral argument, the parties agreed that ERISA and its relevant regulations neither require a plan to give an employee credit for time during which he or she received workers' compensation benefits nor do they prohibit a plan from giving such credit. Thus, we must examine the plan to determine whether it should be construed to give such credit. It is our opinion that the clear language of the plan unambiguously provides for such credit. For a period in each of these two fiscal years, Perry performed no services because of his disability, and during these periods he was entitled to payment from the university pursuant to the terms of the Workers' Compensation Act, G.L.1956 chapters 29–38 of title 28.[2] Under the plain and natural meaning of the terms of the plan, he must be given credit for the time he was not performing duties because of a disability for which he was receiving workers' compensation benefits.

The university argued that we should ascertain in the plan's language an *implied* exclusion for time during which an employee received workers' compensation benefits. We disagree. The crux of the university's argument is that the plan specifically includes by reference 29 C.F.R. § 2530.200b–2(b) and (c), and that these two provisions make reference to § 2530.200b–2(a). Specifically, § 2530.200b–2(a)(2)(ii) provides that an employer is not required to give credit for time in which an employee does no work but is paid pursuant to an applicable workers' compensation law. We reject this argument for two reasons. First, the language of the university's plan is clear and unambiguous in granting credit during a period of incapacity; hence, we need not look to extrinsic sources to determine its meaning. Second, although it is true that the federal provision does permit an employer to exclude time on workers' compensation from being credited under a plan, such an exclusion is not automatic when, as here, specific language indicating the exclusion is absent. Thus, the university has not convinced us to look beyond the plain meaning of the plan.

---

2. It is irrelevant whether Perry's workers' compensation benefits actually were paid directly by the university or were paid by an insurer because he was entitled to payment from the university. G.L.1956 § 28–33–1.

The university also argued that even if Perry were to be credited for the time he received workers' compensation benefits, he could receive a total of only 501 hours of such credit. Again, this claim is directly contradicted by the plain language of the plan. Section 1.14(b) of the plan states that "[n]o more than five hundred and one (501) Hours of Service shall be credited under this subsection *for any single continuous period.*" (Emphasis added.) Perry, however, was out of work on workers' compensation for two continuous periods. The first period lasted from June 19, 1993, to April 9, 1994, after which he returned to work for nearly seven months. He then left work again on November 5, 1994, and was out of work until his employment was terminated on February 25, 1995. Under the terms of the plan, Perry can receive up to 501 hours of credit for each of these continuous periods.

Because the university's pension plan required that Perry be given credit for an additional 501 hours of service in the 1993–1994 fiscal year and in the 1994–1995 fiscal year, those additional hours of service would bring Perry to the fifteen-year service requirement for eligibility for a disability pension. Because this was the only disputed issue in the case, the trial justice should have denied summary judgment for the university and granted summary judgment to Perry.

For the foregoing reasons, Perry's appeal is sustained. The judgment of the Superior Court is reversed, and the case is remanded to the Superior Court with our decision endorsed thereon and with our instruction to enter judgment in favor of Perry.