DECISION
This matter is before the Court for decision on Defendants Capella South Condominium Association, Inc. ("Capella") and America Condominium Association, Inc.'s ("America") Motion for Summary Judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure on their Counterclaim for Declaratory Judgment pursuant to G.L. 1956 §§ 9-30-2 and 9-30-3. In this underlying action, Plaintiff Bennie Sisto, as Trustee of the Goat Island Realty Trust ("Plaintiff"), challenges the validity of the adoption of Defendant Goat Island South Condominium Association, Inc.'s ("GIS") Second Amendment and Restated Declaration (the "Master Declaration"). Capella and America now contend that no genuine issue of material fact exists, and they are entitled to judgment in their favor as a matter of law, as to the following declaration: "pursuant to § 34-36.1-2.17(d), increasing any of the 154 unit boundaries requires unanimous consent of all condominium unit owners."[1] *Page 2 
 I Facts and Travel
GIS is a condominium originally created in 1988 by the Declaration of Condominium (the "First Declaration"). The First Declaration was amended from time to time with the current document, the Master Declaration, adopted August 25, 2007. The Rhode Island Condominium Act[2] ("the Act") applies to any condominium created in Rhode Island after July 1, 1982, including GIS and its Declarations. GIS consists of 154 residential units located in the following three "Residences": 1) 46 units located in America; 2) 89 residential units located in Capella; and 3) 19 separate townhouse, stand-alone residential units located in Defendant Harbor Houses Condominium Association, Inc. ("Harbor Houses"). In accordance with § 34-36.1-2.01 of the Act, each of the three Residence Condominiums has its own Declaration of Condominium recorded in the City of Newport Land Evidence Records. The Act and the Master Declaration, together with each respective Residence Condominium Declaration, govern the rights, responsibilities and obligations between the condominium associations and the GIS unit owners.
On or about October 19, 2006, Plaintiff filed an application with the Coastal Resources Management Council (the "CRMC") to demolish his existing Unit and construct a new and larger single-family dwelling that would extend beyond the Unit's current "footprint."[3] The CRMC requires applicants to provide "a letter from the local tax assessor stating ownership of the property." The local tax appraisal specified the assessed value for "Improvements," which includes the Unit, but provided no assessed value for the "Land" beneath and surrounding the Unit. On January 16, 2007, America submitted a substantive objection to the Plaintiff's *Page 3 
application to the CRMC. The objection stated that: (1) Plaintiff did not own the land it proposed to expand upon; (2) that Plaintiff's proposed expansion failed to comply with CRMC setback regulations; and (3) that a Rhode Island Supreme Court decision had held that the condominium common areas are commonly owned by all 154 unit owners (citing America Condominium v. IDC,Inc., 870 A.2d 434 (R.I. 2005)).
Nonetheless, Plaintiff proceeded with his CRMC application, and on October 7, 2007, he re-submitted plans for his proposed expansion. On November 26, 2007, counsel for America and Capella submitted a substantive objection stating that Plaintiff was not the owner of the land upon which he intended to expand upon. Unsatisfied with Plaintiff's ownership interest in the land, the CRMC refused to process Plaintiff's application. Plaintiff therefore filed suit, asking this Court for a declaratory judgment. On January 30, 2008, Plaintiff filed revised building plans, together with supporting materials, with the CRMC. On February 20, 2008, the CRMC, by letter, informed Plaintiff that it refused to process his application on the grounds that it lacked "jurisdiction to resolve the ownership issue."
Plaintiff filed the underlying Complaint on September 12, 2008, in which he claims that the Master Declaration adversely affects his rights and obligations. Plaintiff also claim that the Master Declaration is invalid because the voting procedures utilized to adopt the Master Declaration violated the amendment provision of the First Declaration, as well as Sections 34-36.1-2.17(a) and 34-36.1-2.17(d) of the Rhode Island Condominium Act, (the "Act").
 II Standard of Review
"Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to *Page 4 
judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v. Burriville RacingAssociation, 603 A.2d 317, 320 (R.I. 1992). It is well settled that in ruling on a motion for summary judgment, the motion justice should construe all evidence in the light most favorable to the non-moving party. Sakonnet Point Marina Ass'n v. Bluff HeadCorp., 798 A.2d 439, 441 (R.I. 2002); McKinnon v. Rhode IslandHospital Trust National Bank, 713 A.2d 245, 247 (R.I. 1998). If after considering the evidence, the motion justice concludes that there are no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Id.
 III Analysis
Capella and America ask this Court to declare that pursuant to Rhode Island General Laws § 34-36.1-2.17(d), increasing any of the 154 GIS condominium units' boundaries requires unanimous consent of all condominium unit owners. Pursuant to § 3.2 of the Master Declaration, the land underlying each Residence Condominium is a GIS Limited Common Element, allocated to the exclusive use of that condominium. The Master Declaration defined the term "GIS Limited Common Elements" as "those portions of the GIS Common Elements allocated . . . for the exclusive use of one or more but fewer than all of the GIS Units." See Master Declaration, § 1.16. Similarly, the Act defines a "Limited Common Element" as "a portion of the common elements allocated by the declaration . . . for the exclusive use of one or more but fewer than all of the units." Section 34-36.1-1.03(19) (Emphasis added.) Anything that does not fall within or beneath a Residential Condominium, including the "grounds, gardens, plantings, walkways, parking areas and the improvements thereon . . . not within a Residential Condominium and, not designated as a GIS Limited Common Element . . ." is a GIS Common Element. See Master *Page 5 
Declaration, § 3.1(f), (h). The Master Declaration defines "GIS Common Elements" as "all portions of the GIS Condominium (including GIS Limited Common Elements) other than the Residential Condominiums." Id. at § 1.11. As the parties have stipulated, all GIS Common Elements and Limited Common Elements are owned in an undivided percentage interest by all 154 unit owners.
When determining whether a unit owner is required to obtain unanimous consent of all 154 unit owners to increase his GIS unit's "boundaries," the following three issues must first be examined: 1) whether a unit owner is permitted and authorized to make improvements or alterations to his unit in the form of an expansion provided that it complies with all governing statutes and condominium provisions; 2) whether a unit owner is permitted to expand his unit's "boundaries" onto or into a Common Element or Limited Common Element that is not part of the unit owner's present unit; and, if so, 3) whether the unit owner must comply with the § 34-36.1-2.17(d) of the Act and file an amendment to the Master Declaration, thereby necessitating unanimous consent from all 154 unit owners.
 A A Unit Owner's Right To Make Improvements and Alterations toHis GIS Unit
The Act expressly permits individual unit owners to make "improvements" or "alterations" to their units so long as such "improvements" or "alterations" do not "impair the structural integrity of the mechanical systems or lessen the support of any portion of the condominium." Section 34-36.1-2.11(1). Further, a unit owner may not change "the appearance of the common elements, or the exterior appearance of a unit or any other portion of the condominium, without permission of the association. . . ." Section 34-36.1-2.11(2). In other words, an individual unit owner may construct improvements or build any structure wholly *Page 6 
within the "boundaries" of a single condominium unit. A unit's "boundaries" are defined by the Act as the floors, ceiling, walls, door, and windows of the unit. See Section 34-36.1-2.02.
Consequently, an individual unit owner's right to construct upon and improve his unit does not constitute the exercise of a "development right," which the Act exclusively reserves to "declarants."[4] This is so because improvements made to the interior of a particular unit do not alter any common areas or affect the other unit owners' ownership interest in the condominium. Conversely, a declarant must amend the condominium declaration to exercise a "development right" because "the exercise of such a right changes the legal rights and ownership interests of the other condominium-unit owners." Section 34-36.1-2.10(a). It therefore follows that any improvements or alterations made by an individual unit owner to a unit which extend beyond the unit, as defined by the Act and applicable condominium declaration, would invariably alter common areas and affect the other unit owners' ownership interest in the condominium. Thus, while the Act expressly permits and authorizes a unit owner to make improvements or alterations exclusively within his unit's "boundaries," the Act does not automatically grant a unit owner the absolute right to expand his unit beyond its current "boundaries." Therefore, the Court must next consider whether an individual unit owner has a right to expand his unit's "boundaries" onto a Common Element Limited Common Element. *Page 7 
 B. A Unit Owner's Right To Expand His Unit onto a CommonElement or a Limited Common Element
Neither the Act nor the Master Declaration expressly permits a GIS unit owner to expand his unit's "footprint" or "boundaries" onto a Common Elements or a Limited Common Element that is commonly owned by all 154 unit owners. Further, our Supreme Court has yet to address an individual unit owner's right to expand his unit's "boundaries" onto a Common Element or Limited Common Element.
The Act does state, however, that a unit owner is permitted and authorized to make improvements or alterations to his unit subject to the provisions of the declaration, but such changes may not change the appearance of the common elements without the association's permission. See Section 34-36.1-2.11(2). Thus, an individual unit owner may arguably change a Common Element or Limited Common Element's appearance by expanding his unit's "boundaries" onto or into the Common Element or Limited Common Element with the association's approval.
 C Obligations Associated with Increasing Any of the154 Unit "Boundaries"
Assuming that a GIS unit owner is permitted to expand his unit's "boundaries" onto or into the Common Element or Limited Common Element surrounding his Unit, the Court must next consider whether the unit owner must first obtain the unanimous consent of all 154 GIS unit owners. *Page 8 
 1 Expansion onto a Common Element
The Act provides that a condominium declaration must allocate[5]
a fraction or percentage of undivided interest in the common elements to each unit. Section 34-36.1-2.07(a). The Act further provides that a unit owner may relocate the "boundaries" between adjoining units, and the owners of any two or more units may apply for reallocation of their respective common element interests to the executive board. Section 34-36.1-2.07(f). Their application, however, may not attempt to alter common element interests except as they relate to the proposed reallocation of their unit interests.Id. If the executive board determines that the reallocation is reasonable, the association subsequently prepares and records an amendment that identifies the units involved and states the reallocations. Id. Section 34-36.1-2.17(a) provides a specific exception for these amendments and states that "[e]xcept in cases of amendments that may be executed by . . . certain unit owners under § 34-36.1-2.07(f) . . . the declaration . . . may be amended by only a vote or agreement of unit owners of units. . . ." (Emphasis added.) Therefore, § 34-36.1-2.17 permits an executive board to amend a condominium declaration without a vote or agreement of the unit owners.
Section 34-36.1-2.17(d) goes on to state that "[e]xcept to theextent expressly permitted or required by other provisions of thischapter, no amendment may . . . change the boundaries of any unit, [or] the allocated interests of a unit. . . ." (Emphasis added.) Section 34-36.1-2.07(f) clearly provides such an exception to § 34-36.1-2.17(d) because the statute permits a unit owner to change his unit's "boundaries" with consent of the executive board. Therefore, if a unit owner seeking to expand his unit's "boundaries" between adjoining units properly applies for a *Page 9 
reallocation of each unit's respective common element interests to the executive board, and the board subsequently records an amendment, then unanimous consent of all condominium unit owners is not necessary. Consequently, pursuant to § 34-36.1-2.17(d), increasing any of the 154 GIS unit boundaries does not require unanimous consent of all condominium unit owners.
 ii Expansion onto a Limited Common Element
For purposes of discussion, however, the Act does not provide a similar expansion procedure for a unit owner seeking to expand his unit onto a Limited Common Element. Instead, the Act requires a condominium declaration to specify to which unit or units each Limited Common Element is allocated, and such allocations may not be altered without the consent of the unit owners whose units are affected. Section 34-36.1-2.08(a). Additionally, a Limited Common Element "may be reallocated by an amendment to the declaration executed by the unit owners between or among whose units the reallocation is made." Section 34-36.1-2.08(b). The Act also mandates, however, that "no amendment may . . . change . . . the allocated interests of a unit, or the uses to which any unit is restricted, in the absence of unanimous consent of the unit owners." Section 34-36.1-2.17(d).
Section 2.3 of the Master Declaration[6] differs from § 34-36.1-2.17(d) of the Act, *Page 10 
however, and does not require a declaration amendment or unanimous consent from all GIS unit owners when a proposed expansion will alter a unit's allocated interests. Instead, § 2.3 of the Master Declaration only requires a unit owner to receive approval from the Harbor Houses Executive Board before making any alterations or changes to the exterior of the building or increasing the building's size. See Master Declaration, § 2.3(a)(i). Further, if a Harbor Houses unit owner's proposed expansion will extend any portion of the unit's building beyond the building's existing "footprint," § 2.3 only requires the unit owner to obtain approval from the Harbor Houses' Executive Board.
Nonetheless, the provisions of a declaration under which a condominium is created must conform to all statutory requirements, and to the extent that they conflict therewith, the statute must prevail. 15A Am. Jur. 2d Condominium,Etc. § 7 (2009) (citing Winkelman v. Toll,661 So.2d 102 (Fla. Dist. Ct. App. 4th Dist. 1995)). Additionally, § 2.3(a)(i)(D) of the Master Declaration specifically states that any changes, alterations or construction undertaken by a unit owner must be performed in accordance with the applicable state laws. Thus, in any instance where the Master Declaration conflicts with the Act, a unit owner must comply with the *Page 11 
applicable provisions of the Act rather than the inconsistent provision set forth in the Master Declaration.
Accordingly, because the applicable provisions of the Master Declaration directly conflict with the Act, a GIS unit owner must comply with the applicable provisions of the Act rather than the expansion provisions set forth in § 2.3 of the Master Declaration. Therefore, a unit owner who wishes to permanently take a portion of the Limited Common Element, thereby necessitating a "reallocation," is required to obtain unanimous consent from all other unit owners to amend the condominium declaration.See Sections 34-36.1-2.08(b), 34-36.1-2.17(d).
Moreover, basic principles of property law also apply to instances where a unit owner seeks to expand his unit onto or into a Limited Common Element. Bonczek v. Helena Place, Inc.,1990 WL 105766, *3 (Del.Ch. 1990) (holding that where a unit owner sought to expand his free-standing unit to include, and build over, land that was part of the common elements, the unit owner was required to obtain unanimous consent from all other unit owners). According to these principles, "[n]o individual or group may occupy, or authorize the occupation of, another person's property to that property owner's exclusion." Id. (citing Loretto v.Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435 (1982)). Further, no unit owner may "be deprived of his property right in the condominium development without his consent." Id. Thus, while a unit owner's unit expansion onto a Limited Common Element may not change the percentage interest of a particular unit owner in "the literal or formal sense," it would, nonetheless, "achieve that result by reducing common elements in which all unit owners have an undivided interest." Id. at 5.
Consequently, granting one unit owner exclusive use of a common area is sufficient to change the relative interest of the other unit owners who own a percentage interest in that *Page 12 
common area. Strauss v. Oyster River Condominium Trust,1992 WL 12153337, *22 (Mass. Land Ct. 1992) (holding that a defendant unit owner's expansion of his unit onto a common area required unanimous consent of all owners for any change in the percentage interest in the common areas);[7] see also Kaplan v.Boudreaux, 410 Mass. 435, 443 (1991); Bonczek,1990 WL 105766, *5 (Del.Ch. 1990) (holding that an undivided interest is an undivided interest in the whole, and when that whole changes, that interest, if not the percent, also changes). Therefore, unanimous consent from all unit owners is necessary to legally enable a unit owner to expand his unit onto a Limited Common Element.
Thus, where a unit owner plans to enlarge his unit's "boundaries" to include — and possibly build over — a Limited Common Element. That Limited Common Element would thereby become part of that unit. Consequently, the proposed expansion would disturb the Declaration's current Limited Common Element allocation.See Section 34-36.1-2.08(a). As a result, the proposed expansion would necessitate a "reallocation" of the remaining Limited Common Element allocated to the expanded unit and would ultimately decrease each unit owner's percentage interest in all Limited Common Elements. The unit owner must therefore obtain unanimous consent from all 154 unit owners to amend the GIS Declaration before the affected Limited Common Element can be reallocated. See Section 34-36.1-2.17(d).
Further, in accordance with basic property law principles, a GIS unit owner is prohibited from permanently occupying the Limited Common Element to the absolute exclusion of the other 154 property owners without their consent. Any unit expansion beyond the current Unit's *Page 13 
"footprint" or "boundaries" would infringe upon the current allocation of Limited Common Elements. Specifically, the construction of an addition on a portion of the Limited Common Element that comprises a unit owner's yard would serve as a permanent occupation of that land, which is commonly owned by all unit owners. Thus, because no unit owner may be deprived of his property right without his consent, consent from all 154 unit owners is necessary. See Bonczek, 1990 WL 105766 at *3.
In conclusion, the Master Declaration, the Harbor Houses Declaration, and the Act all afford a unit owner an absolute right to make improvements or alterations to his unit in the form of an expansion provided that the unit owner complies with all governing statutes and condominium provisions. The right to make improvements arguably includes a right to construct an addition that may reduce the area of a condominium's Common Element and Limited Common Element, provided that such an addition does not change the Common Element or Limited Common Element's appearance without association approval. See Sections 34-36.1-2.11(2).
If, however, a unit owner proposes to expand his unit beyond the unit's current "footprint" and "boundaries," and onto or into a Limited Common Element, the unit owner must adhere to the procedures set forth in the Act, as well as any other non-conflicting provisions set forth in § 2.3 of the Master Declaration. Therefore, a unit owner is required to obtain unanimous consent from all 154 GIS unit owners to amend the Master Declaration. Conversely, if a GIS unit owner simply proposes to expand his unit's "boundaries" between his unit and an adjoining unit, and he properly applies to the Executive Board for a reallocation of each unit's respective common element interests, then unanimous consent from all unit owners is not necessary for the Executive Board to amend the Master Declaration. Therefore, this Court cannot state that an *Page 14 
increase of any of the 154 unit boundaries requires the unanimous consent of all condominium [GIS] condominium unit owners.
 III Conclusion
For the foregoing reasons, this Court denies Capella and America's Motion for Summary Judgment as to the following declaration: pursuant to § 34-36.1-2.17(d), increasing any of the 154 unit "boundaries" requires unanimous consent of all condominium unit owners. An appropriate form of order and judgment shall be presented.
[1] The parties have already agreed to the following declaration set forth in Capella and America's Counterclaim: "The land underneath the [GIS] condominium community is owned in an undivided percentage interest by all 154 unit owners."
[2] See Section 34-36.1-1.01, et al.
[3] Black's Law Dictionary defines the term "footprint" as "[t]he shape of a building's base." Black's Law Dictionary
672 (8th Ed. 2004). Additionally, § 2.4 of the Harbor Houses Declaration defines the term "footprint" as "the foundation of the Building as it existed on January 20, 1988.
[4] Section 34-36.1-1.03(11) defines a "development right" as "any right or combination of rights reserved by a declarant . . . to . . . [a]dd real estate to a condominium . . . [c]reate units, common elements, or limited common elements within a condominium . . . [s]ubdivide units or convert units into common elements, or . . . [w]ithdraw real estate from a condominium." When addressing unit improvement and expansion rights, the Act "draws a distinction between `development rights' and the right to make improvements or alterations to a unit." America Condominium Ass'n, Inc. v. IDC,Inc., 870 A.2d 434, 438 (R.I. 2005) (citing Sections 34-36.1-1.03(11) and 34-36.1-2.11). A "declarant" is defined as "any person or group of persons acting in concert who: (i) [a]s part of a common promotional plan, offers to dispose of his, her or its interest in a unit not previously disposed of; or (ii) [r]eserves or succeeds to any special declarant right." Section 34-26.1-1.03(9).
[5] Black's Law Dictionary defines the term "allocation" as "[a] designation or apportionment for a specific purpose. . . ."Black's Law Dictionary 83 (8th Ed. 2004). "Allocation" is also defined as "assignment or allotment."Jacobson v. Bowles, 53 F. Supp. 532, 534 (D.C.Tex. 1944).
[6] Section 2.3 of the amended Master Declaration states, in pertinent part,
 (i)Improvements, alterations or changes may be made to any building or Common Element of Harbor Houses Condominium to the extent permitted by its Declaration as of June 30, 2007. No alterations, change in exterior appearance or increase in the size of any building ("improvements") shall be made that is not first approved by the Harbor Houses Condominium executive board and does not comply with the following:
 (A) the improvements shall not encroach into the yard designated as a Limited Common Element for the adjoining Residence Unit, nor shall the improvements encroach beyond the Limited Common Elements of the Residence Unit that is being improved, altered or changed;
 * * *
 (D) the work shall be done in accordance with the applicable Federal, State and local laws in a good and workman like manner free from defective materials;
 * * *
 (N) if any proposed improvements, alterations or increases in the size of any building would extend any portion of the building in which such unit is contained beyond the "footprint," so called, of the building as it existed on January 20, 1988 and would significantly diminish the water view of other Residence Units, as viewed from the glass doors/windows/balconies of such other Residence Units, the Owners of not less than two Residence Units which are in reasonable proximity to such proposed improvements, alterations or changes may request in writing review by his/her Residence Condominium Board. If that Board determines that the diminution of the water view is significant, it may, by majority vote of its members, refer the matter for final and binding review by the GIS Board. . . . Sections 2.3(a)(i); 2.3(a)(i)(A); 2.3(a)(i)(D); 2.3(a)(i)(N).
[7] This Court is aware that the Massachusetts Legislature subsequently amended its Condominium Statute to expressly state that the designation of a limited common area to an individual unit owner is not deemed to affect or alter the undivided interest of any owner. See Mass. Gen. Laws ch. 183A, § 5(b)(1). Nonetheless,Strauss remains relevant to the instant matter because Rhode Island has yet to adopt a similar statute. In fact, the lack of such a statute is the precise heart of this matter.