THE FIRST BAPTIST SOCIETY vs. JOHN H. WETHERELL.

APRIL 27, 1912.

PRESENT:  Dubois, C. J., Johnson, Parkhurst, Sweetland, and Vincent, JJ.

*(1)  Deeds.  Construction.  Easements.*

Plaintiff having constructed its building so that its foundation encroached upon the land of ancestor of defendant, about two feet, with the eaves extending over a further distance of about two feet, defendant's ancestor by deed quitclaimed his interest in the land appropriated with the "privilege for the roof of said meeting house to drip on my land forever."
At this time the building had been completed.

*Held,* that the intent of the grant was to permit the drip from plaintiff's building *as it then stood,* to fall upon defendant's land.

*(2)  Same.*

The extent of the rights acquired under a grant, must depend upon the construction placed upon its terms, and in the construction of such instrument, the court will look to the circumstances attending the transaction, the situation of the parties and the state of the thing granted, to ascertain the intention of the parties, and in case of doubt, the grant must be taken most strongly against the grantor.

*(3)  Deeds.  Easements.  Right of Drip.*

An express grant of a particular right carries with it by implication the additional right of doing whatever is reasonably necessary for the enjoyment of the right, and where one has acquired the right for his roof as it then existed to drip on the land of another, he has the right to maintain the roof from which the drip flows, and this easement is not nullified so as to permit the servient estate to remove all overhanging objects, by the fact that in an action for trespass and ejectment between the owners of the dominant and servient estates, in which the question of the easement was not raised, the title of the owner of the servient estate in the strip of land over which the roof projected, was confirmed.

TRESPASS ON THE CASE.  Heard on exceptions of defendant, and overruled.

VINCENT, J.  This is an action of trespass on the case to recover damages for interference with an easement.

The case was tried before a jury, in the Superior Court, and a verdict rendered for the plaintiff for $200.  It now comes to this court upon various exceptions of the defendant

to the rulings and charge of the trial judge, and his refusal to grant a new trial.

The plaintiff and defendant own adjoining estates in Newport. The defendant's title is derived from Sandford Bell, who, in 1846, owned the land immediately north of that on which stands the church edifice of the plaintiff. The plaintiff society so located and constructed its building, presumably through inadvertence, that its foundation encroached upon the land of Bell, a distance of two feet, the eaves extending over a further distance of about two feet and eight inches. On May 12, 1846, Bell, who by the way was a member of the plaintiff society, conveyed thereto, by a quitclaim deed, all his right, title and interest in and to, the strip of land which had been appropriated and built upon by the church. Bell also included, in this deed, the grant of an easement or "right of drip" to the plaintiff society upon his remaining land.

(1)     The Bell deed contained the following descriptive language and habendum: "A certain strip of land about two feet in width, running easterly and westerly along and under the northerly side of the meeting house of said society, which said meeting house lately built by said society, stands as aforesaid about two feet on the land of the grantor. It being the intention of the grantor to release to said society all of his said land adjoining the northerly side of the land of said society in said town of Newport, on which the northerly side of said meeting house stands; with the privilege for the roof of said meeting house to drip on my land forever."

"To Have and to Hold the same with the said privilege of the drippings to the said First Baptist Society of Newport and their assigns forever."

Whatever may have been the legal effect of this conveyance and grant, it nevertheless becomes apparent therefrom, as well as from the relations of the parties, that it was the intention of Bell to save the plaintiff society from any consequences which might arise from its unintentional encroach-

ments upon his property and rights, and to place it in a position where it might, in the future, rightfully maintain the structure which it had already erected.

The plaintiff society remained in the uninterrupted enjoyment of the rights, sought to be conveyed and granted by Bell as aforesaid, down to the latter part of the year 1905, when the defendant, in providing for certain changes in his own building, adjoining the plaintiff's premises, removed a portion of the jet on the north side of the church, reducing the width thereof, for a distance of about twelve feet, from two feet and eight inches to about two inches. Having cut away the jet, the defendant supplied some gutters and pipes designed to carry off the flow of water from this section of the roof, or convey it to other gutters and pipes already attached to the plaintiff's building. As a result, however, water ran over the gutters, came down on the north side of the church and on to the ground, worked its way into the church foundations and into the cellar, doing some damage and necessitating some expenditure for repairs.

At the time of the grant from Bell, May 12, 1846, the church edifice had already been fully completed. It remained without exterior change down to 1905 when the defendant cut away the eaves to accommodate the upward projection of his own building. Bearing in mind these facts and considering the particular language of the grant it becomes evident that Bell intended to, and did, provide that the drip from the plaintiff's building, as it then stood, should fall upon his land.

The language of the grant "with the privilege for the roof of said meeting house to drip on my land" is significant. The words "said meeting house" in view of all the circumstances surrounding the transaction must, we think, be construed as referring to the building as it then existed.

(2) The extent of the rights acquired must depend upon the construction placed upon the terms of the grant and in construing such instruments the court will look to the circumstances attending the transaction, the situation of the parties, and the state of the thing granted, to ascertain the intention of

the parties, and in case of doubt the grant must be taken most strongly against the grantor.    14 Cyc. 1201.

The plaintiff having acquired an easement in the land of the defendant it became entitled to the full and proper enjoyment thereof without interference from the owner of the servient estate, Jones on Easements, Section 170, page 147; *Keats* v. *Hugo*, 115 Mass. 204, 216, and upon any interference therewith the owner of the dominant estate might proceed by way of injunction or suit at law for damages, as in the present case.

At the same time that the plaintiff society commenced the present action against the defendant it also brought an action against him, in trespass and ejectment, for the recovery of four parcels of land, one of such parcels being an oblong strip running along the northerly side of the church building beneath that part of the roof which the defendant had cut off.    In this last named suit, judgment was rendered for the defendant—see 72 Atl. 641.    The defendant now cites this case, claiming that the questions raised in the present suit are *res adjudicata.*

(3)    The defendant contends that because of this judgment his title, to the strip of land in question, has been confirmed and that he now has the right to build thereon in any manner which he chooses, cutting off everything which obstructs his way.    In other words, that the judgment in the former suit operates as a nullification of the easement granted by the Bell deed and that the "right of drip" of the plaintiff society has become effaced thereby.

With this contention we cannot agree.    An examination of that case shows that it was brought for the purpose of ejecting the defendant, the plaintiff claiming that the strip of land, two feet wide, mentioned in the Bell deed, was not the strip covered by the foundation of the plaintiff's building, but was a strip upon the north side and beyond the line of the church structure.    The plaintiff therefore relied upon a record title in fee to this outside strip of land and the question of the plaintiff's easement was neither raised nor considered in that suit.

The defendant cites a number of authorities in support of the principle expressed in that old maxim "*Cujus est solum, ejus est usque ad coelum,*" and that the owner of the land may therefore remove all overhanging objects, as for instance the limbs of trees, etc., and claims that the right is equally clear in the matter of overhanging roofs. Such general right cannot be disputed. However, the questions presented here are somewhat different. They are: (1) Did the plaintiff acquire an easement in the land of the defendant through the grant contained in the Bell deed of May 12, 1846, and (2) if the plaintiff did acquire such an easement, is it still entitled to the enjoyment thereof notwithstanding the judgment in the ejectment suit before referred to?

The fee to this strip of land, along the north side of the church building, is and always has been in the defendant and his predecessors in title, but it is subject to the easement created in the deed from Bell of May 12, 1846.

An express grant of a particular right carries with it by implication the additional right, sometimes called a secondary easement, of doing whatever is reasonably necessary for the enjoyment of the right granted,—14 Cyc. 1203 and cases cited,— and therefore the plaintiff having acquired the right for its roof, as it then existed, to drip on the land of Bell it naturally follows that it has the right to maintain the roof from which the drip flows.

The defendant has taken a number of exceptions to the rulings of the court on the admission and rejection of testimony; to certain portions of the charge; to the refusal to charge as requested, and to the decision of the trial judge denying the defendant's motion for a new trial, etc.

None of these exceptions, in view of the conclusions which this court has already reached, can be sustained and they are accordingly overruled.

The case is remitted to the Superior Court for the County of Newport, with direction to enter judgment on the verdict.

*Sheffield, Levy & Harvey*, for plaintiff.

*Frank F. Nolan, Comstock & Canning, Patrick P. Curran*, for defendant.