The SAKONNET POINT MARINA
ASSOCIATION, INC.

v.

BLUFF HEAD CORP. et al.

v.

Harbor Point Properties, Inc.

No. 2001–136–Appeal.

Supreme Court of Rhode Island.

June 4, 2002.

Stephen M. Prignano, Kathleen M. Powers, Stephen J. MacGillivray, Marc DeSisto, Providence, for Plaintiff.

Joseph R. Palumbo, Jr., Middletown, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, J.

The defendants, Bluff Head Corporation and its principal shareholder, Philemon T. Marvell, M.D. (collectively, Bluff Head), have appealed a summary judgment that granted specific performance of a deed's parking easement to the plaintiff, The Sakonnet Point Marina Association, Inc. (Sakonnet Point). Bluff Head contended that a Superior Court justice improperly rewrote the deed in favor of Sakonnet Point and also erred by imposing the easement. Because we agree with the motion justice's construction of the deed, we deny and dismiss the appeal and affirm the judgment of the Superior Court.

### Facts and Procedural History

In 1992, HCM Restaurant, Inc. (HCM), deeded a parcel of real estate to Bluff Head. The property was located at Sakonnet Point in Little Compton, and was designated lot No. 434-2 in the Little Compton Tax Assessor's Plat. When it conveyed the parcel by quitclaim deed, HCM reserved a parking easement for the benefit of the patrons of a marina that HCM owned, bordering lot No. 434-2. At the time of the conveyance, Bluff Head anticipated purchasing an adjacent, additional parcel, lot No. 434-1, having entered into a purchase and sale agreement for that property with the property's owner, Fleet National Bank (Fleet). Bluff Head purchased only lot No. 434-2, however, and Fleet retained lot No. 434-1 until Harbor Point Properties, Inc. (Harbor Point), the intervenor in this case, bought the parcel in 1994.

In 1993, Sakonnet Point acquired the marina from HCM, and in 1998, after Bluff Head allegedly repeatedly refused to grant Sakonnet Point's access to lot No. 434-2, Sakonnet Point initiated this action for enforcement of the parking easement re-

served in the deed from HCM. Accordingly, Sakonnet Point filed a three-count complaint: for specific performance (count 1), injunctive relief (count 2), and trespass and ejectment (count 3). Bluff Head argued that it was not required to supply parking on lot No. 434–2, because the deed stated, "The exact location of said parking easement is to be determined by the Grantees, its successors and assigns and may be changed from time to time, but shall at all times be located on the premises conveyed herein *or Lot 434–1.*" (Emphasis added.) Bluff Head maintained that, under this provision of the quitclaim deed, it could elect to situate the parking on lot No. 434–1, rather than on No. 434–2. Harbor Point, the owner of lot No. 434–1, intervened and sought a declaratory judgment that the deed from HCM to Bluff Head could not have created an easement over lot No. 434–1. All three parties filed motions for summary judgment and agreed at the hearing that "the controlling legal issue" was whether marina patrons had a right to park on lot No. 434–2. The motion justice found in favor of Sakonnet Point and Harbor Point. She dispositively found that, because HCM did not own lot No. 434–1 at the time it conveyed lot No. 434–2 by quitclaim deed to Bluff Head, HCM reserved an easement only over lot No. 434–2.[1]

Seeking to implement the judgment, Sakonnet Point filed a post-hearing motion for court approval and specific enforcement of a proposed parking plan for lot No. 434–2. After an evidentiary hearing on the motion, the justice directed, "[Bluff Head] is hereby ordered to provide enough space to allow for the parking of 21 vehicles and those spots will be located on lot 434–2. However, the determination of

what constitutes adequate space and how exactly those spots will be designed shall be determined by an engineer hired by the parties for that purpose." The justice granted Sakonnet Point's motion to appoint an engineer, whose plan for parking was implemented later by order of the motion justice, over Bluff Head's objection. A final judgment was entered pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure on count 1 of Harbor Point's complaint, for declaratory judgment, and on count 1 of Sakonnet Point's complaint, for specific performance. Thereafter, the motion justice granted Sakonnet Point's motion for injunctive relief for painting parking spaces on the surface of lot No. 434–2, under the decreed plan. Bluff Head appealed.

### Standard of Review

We review a grant of summary judgment *de novo. Nonnenmacher v. City of Warwick,* 722 A.2d 1199, 1202 (R.I. 1999). In undertaking such a review, we apply the same standard as the motion justice and affirm the judgment if, "after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *McKinnon v. Rhode Island Hospital Trust National Bank,* 713 A.2d 245, 247 (R.I.1998) (quoting *Rotelli v. Catanzaro,* 686 A.2d 91, 93 (R.I.1996)).

### Deed Construction

Although the facts of this case were generally undisputed, the parties offered different interpretations of the language in the quitclaim deed, by which HCM sold lot

1. Although the decision indicated that "[p]laintiff's" motion for summary judgment was granted, a later order said that both Harbor Point's and Sakonnet Point's motions for summary judgment were granted.

No. 434–2 to Bluff Head. The parking easement is described as follows:

> "Said premises are conveyed subject to and together with the benefit of: * * * all easements reasonably necessary for access and egress to said marina facility for the enjoyment, use, maintenance and repair of the same, and for the parking of twenty-one (21) motor vehicles for the benefit of said slip owners/lessees and their guests, said easement area(s) to contain not less than 5,400 square feet of land. *The exact location of said parking easement is to be determined by the Grantees, its successors and assigns and may be changed from time to time, but shall at all times be located on the premises conveyed herein or Lot 434–1.* The exact location of any easements necessary for access and egress to the marina facilities shall be determined and agreed to by both the grantor and grantee herein. . Said easements reserved herein are not mutually exclusive." [2] (Emphasis added.)

At issue is the meaning of the emphasized phrase describing the location of the parking easement. Sakonnet Point and Harbor Point asserted that, because HCM did not own lot No. 434–1 when it conveyed lot No. 434–2 to Bluff Head, HCM had no authority to encumber lot No. 434–1 with an easement. Consequently, the deed should be construed as establishing the parking easement only on lot No. 434–2. Bluff Head, in contrast, argued that terms of the deed must be construed as written, in the absence of a prayer for reformation of the deed. The motion justice found that the deed clearly provided for a parking easement to be located "on one of the two lots, 434–1 or 434–2," but she noted that, because "[o]ne cannot grant an easement in what one does not own," the purported easement on lot No. 434–1 could not be legally recognized.

▮▮▮ Whenever possible, the terms of a deed are construed according to their plain meaning. *Kusiak v. Ucci*, 53 R.I. 36, 38, 163 A. 226, 226 (1932). Here, the language of the deed is clear. It is also clear that neither party to the deed had an ownership interest in lot No. 434–1. It is a basic tenet of the law of real property that an easement cannot be reserved by deed over property that the reserving party does not own.[3] 4 *Powell on Real Property* § 34.04[8] at 34–37 (Michael Allan Wolf ed.2000); 7 *Thompson on Real Property* § 60.03(a)(4) at 412 (David A. Thomas ed.1994). Consequently, the option offered in Bluff Head's quitclaim deed of situating the easement on lot No. 434–1 was a nullity, thus rendering inoperative the disjunctive "or." Moreover, because HCM conveyed the property by quitclaim deed, without warranty, HCM transferred only the rights in the property not otherwise reserved that it actually possessed at that time. *Wood v. City of East Providence*, 504 A.2d 441, 443 (R.I.1986) (citing G.L. 1956 § 34–4–11; G.L.1956 §§ 34–11–4, –17, –18, and –28; and *Lapre v. Flanders*, 465 A.2d 214, 216 (R.I.1983)); 14 *Powell on*

---

**2.** The language quoted is taken from the version of Exhibit A of the deed submitted by Bluff Head. The version submitted by Sakonnet Point differs from the quoted version, stating, "Said premises are conveyed subject to and the benefit of: * * *. The exact location of said parking easement is to be determined by the Grantees, their heirs and assigns and may be changed from time to time, * * *."

**3.** Counsel for Sakonnet Point noted that HCM's reservation in the deed for parking on lot No. 434–1, absent an ownership interest therein, was as unenforceable as an easement by HCM to park on the White House lawn would have been.

*Real Property* § 81A.03[1][c] at 81A–29 (Michael Allan Wolf ed.2000).

In a case such as this one, a court must "look to the circumstances attending the transaction, the situation of the parties, and the state of the thing granted," and in case of doubt, must adopt the interpretation most favorable to the grantee. *First Baptist Society v. Wetherell*, 34 R.I. 155, 157–58, 82 A. 1061, 1062 (1912). Moreover, "[w]e are bound to give the language in the deed such an interpretation as will carry out the grantor's intent." *Reniere v. Gerlach*, 752 A.2d 480, 483 (R.I.2000).

Here, the motion justice found that the option of situating the parking easement on lot No. 434–1 was included "in anticipation that [Bluff Head] would purchase and subsequently own both pieces of property." From this fact, which Bluff Head did not dispute, it follows that the grantor—HCM—intended to reserve, for the benefit of the marina, a parking easement on either of the two appurtenant lots that Bluff Head expected to own. Irrespective of whether Bluff Head ever ultimately consummated its purchase of lot No. 434–1, the quitclaim deed from HCM to Bluff Head was clearly executed as a conveyance only of lot No. 434–2, with a reservation of a parking easement for the benefit of the marina. In light of this clear intent, even considering the evidence in the light most favorable to Bluff Head, we conclude that the language "or Lot 434–1" does not relieve the conveyed premises—lot No. 434–2—of the burden of the parking easement. Rather, the term "or Lot 434–1" merely expanded Bluff Head's discretion to select "[t]he exact location of said parking easement" if it had already acquired or should in the future obtain an interest in lot No. 434–1. This conclusion is a matter of construction and does not, as Bluff Head contended, constitute reformation of the deed.

### Requested Relief

Bluff Head also argued that when the motion justice imposed the parking plan on Bluff Head's property, she ignored the language in the deed that states, "[t]he exact location of said parking easement is to be determined by the Grantees, its successors and assigns and may be changed from time to time."

As the motion justice noted, specific performance is an equitable remedy. "The grant of such relief is not a matter of right, but rests in the sound discretion of the trial justice." *Jakober v. E.M. Loew's Capitol Theatre, Inc.*, 107 R.I. 104, 114, 265 A.2d 429, 435 (1970). A judgment ordering specific performance "will not be disturbed on appeal, provided the * * * justice's 'discretion has been soundly and judicially exercised * * * in the light of reason applied to all the facts and with a view to the rights of all the parties to the action.'" *Citrone v. SNJ Associates*, 682 A.2d 92, 95 (R.I.1996) (quoting *DeBartolo v. DiBattista*, 117 R.I. 349, 353, 367 A.2d 701, 703 (1976)).

Generally, an order of specific performance will be affirmed, provided the deed is "sufficiently certain and definite in its terms to leave no reasonable doubt as to what the parties intended, and no reasonable doubt of the specific thing equity is called upon to have performed, and it must be sufficiently certain as to its terms so that the court may enforce it as actually made by the parties." *St. Lawrence v. Reed*, 74 R.I. 353, 357, 60 A.2d 734, 736 (1948) (quoting 49 Am.Jur. *Specific Performance* § 22 (1939)).

In our opinion, having determined that only lot No. 434–2 is burdened with a parking easement for the benefit of the marina, now owned by Sakonnet Point, the motion justice appropriately gave effect to

the language and intent of the quitclaim deed by ordering specific performance, the relief requested by Sakonnet Point. The motion justice attempted to elicit Bluff Head's participation, but when given an opportunity to designate the precise location of the parking easement—as the deed permits—Bluff Head submitted an unsuitable plan that allowed for twelve to fourteen parking spaces rather than the required twenty-one. Consequently, when Bluff Head failed to provide an alternative proposal for twenty-one spaces within the dimension of "not less than 5,400 square feet," the motion justice was forced to cut the Gordian knot by approving the plan submitted, under the court's direction, by an independent, court-appointed engineer. It is our opinion that, in so doing, the motion justice did not abuse her discretion by ordering that which was specified in the deed. *See McConnell v. Golden,* 104 R.I. 657, 663, 247 A.2d 909, 912 (1968) (holding that when easement is granted without designating precise location, owner of servient property has in first instance right to designate a convenient, suitable, and accessible location, but, if he fails to do so, owner of dominant property may select a suitable location, having regard for interest and convenience of owner of servient land); *Tichman v. Straffin,* 54 R.I. 356, 358, 173 A. 78, 79 (1934) (remanding on ground that easement "should be definitely determined so as to avoid further disputes relating thereto").

In short, Bluff Head would not be before this Court had it submitted a plan in accordance with the deed. Hence, we shall not disturb the implementation of the plan adopted by the Superior Court.

## Conclusion

On the basis of long-established principles pertaining to the construction of deeds in the conveyance of real property, we conclude that the motion justice correctly interpreted the deed in this case and properly implemented its terms. Because no genuine issue of material fact existed, Sakonnet Point and Harbor Point were entitled to judgment as a matter of law. Accordingly, we deny and dismiss Bluff Head's appeal and affirm the judgment of the Superior Court, to which we return the papers in the case.