DECISION
Before this Court is Defendant Goat Island South Condominium Association, Inc.'s ("GIS") Cross-motion for Summary Judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure on GIS's Cross-Claim for Declaratory Judgment pursuant to G.L. 1956 §§ 9-30-2 and 9-30-3. This action involves the proposed expansion of Plaintiff Bennie Sisto, as Trustee of the Goat Island Realty Trust's ("Plaintiff") condominium unit located on Goat Island in Newport, Rhode Island. GIS asks this Court to enter declaratory relief setting forth the rights, status and legal relations of the parties.
Specifically, GIS seeks declaratory clarification on the following issues of 1) whether Plaintiff has standing to independently pursue an application with the Coastal Resources Management Council ("CRMC"); or 2) whether approval of the other 154 GIS unit owners is necessary prior to submission of Plaintiff's application; or 3) whether approval pursuant to Section 2.3 of GIS's Second Amended and Restated Declaration of Condominium (the "Master Declaration") is necessary; or 4) whether approval under both (2) and (3) is required prior submission of an application; or 5) whether other statutes, rules, regulations or documents may be applicable to and determinative of the issues raised in this action ("Sisto II"), as well as Sisto *Page 2 v. America Condo. Assoc., Inc., NC-2008-0119 ("Sisto I"), andSisto v. Goat Island Condo. Assoc., Inc., NC-2008-0508 ("Sisto III").
 I Facts and Travel
GIS is a condominium originally created in 1988 by Declaration of Condominium (the "First Declaration"). The First Declaration was amended from time to time with the current document, the Master Declaration, adopted August 25, 2007. The Rhode Island Condominium Act[1] ("the Act") applies to any condominium created in Rhode Island after July 1, 1982, including GIS and its Declarations. GIS consists of 154 residential units located in the following three "Residences:" 1) 46 units in America Condominium ("America"); 2) 89 residential units located in the Defendant Capella South Condominium ("Capella"); and 3) 19 separate townhouse, stand-alone residential units located in Defendant Harbor Houses Condominiums ("Harbor Houses"). In accordance with § 34-36.1-2.01 of the Act, each of the three Residence Condominiums has its own Declaration of Condominium recorded in the City of Newport Land Evidence Records. The Act and the Master Declaration, together with each respective Residence Condominium Declaration, govern the rights, responsibilities and obligations between the condominium associations and the GIS unit owners. The operative Harbor Houses Declaration is dated May 27, 1988, as amended by the First Amendment, [2] Second Amendment, [3] Third Amendment, [4] Fourth Amendment, [5] and Fifth Amendment.[6]
Pursuant to the Harbor Houses Declaration, all of the land underlying each condominium and unit is a GIS Common Element. *Page 3 
Plaintiff owns Harbor Houses Unit #1, a townhouse that is surrounded by land that § 2.3 and § 2.5 of the Harbor Houses Declaration designate as a Limited Common Element.
Plaintiff proposes to expand his Unit into his yard, which is a Limited Common Element. The Harbor Houses Declaration defines the term "Limited Common Element" as "that portion of the Common Elements appurtenant to or associated with and intended for the exclusive use [but not ownership] by one or more but fewer than all Units, and intended for the exclusive use of such Units . . ." Harbor HousesDeclaration at § 1.16 (Emphasis added.) Similarly, the Act defines a "Limited Common Element" as "a portion of the common elements allocated by the declaration . . . for the exclusiveuse of one or more but fewer than all of the units." Section 34-36.1-1.03(19) (Emphasis added.) The parties have stipulated that Harbor Houses' Limited Common Elements are owned in an undivided percentage interest by all 154 unit owners.
On or about October 19, 2006, Plaintiff filed an application with the CRMC to demolish his existing Unit and construct a new and larger single-family dwelling that would extend beyond the Unit's current "footprint."[7] The CRMC requires applicants to provide "a letter from the local tax assessor stating ownership of the property." The local tax appraisal specified the assessed value for "Improvements," which includes the Unit, but provided no assessed value for the "Land" beneath and surrounding the Unit. On January 16, 2007, America submitted a substantive objection to the Plaintiff's application to the CRMC. The objection stated that (1) Plaintiff did not own the land it proposed to expand upon; (2) that Plaintiff's proposed expansion failed to comply with CRMC setback regulations; and (3) that a Rhode Island Supreme Court decision had held that the condominium common areas are commonly owned by all 154 unit owners (citing America Condominium v. IDC,Inc., 870 A.2d 434 (R.I. 2005)). *Page 4 
Nonetheless, Plaintiff proceeded with his CRMC application, and on October 7, 2007, he re-submitted plans for his proposed expansion. On November 26, 2007, counsel for America and Capella submitted a substantive objection stating that Plaintiff was not the owner of the land upon which he intended to expand. Unsatisfied with Plaintiff's ownership interest in the land, the CRMC refused to process Plaintiff's application. Plaintiff therefore filed suit asking this Court for a declaratory judgment. On January 30, 2008, Plaintiff filed revised building plans, together with supporting materials, with the CRMC. On February 20, 2008, the CRMC, by letter, informed Plaintiff that it refused to process his application on the grounds that it lacked "jurisdiction to resolve the ownership issue."
 II Standard of Review
"Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v. Burriville Racing Association,603 A.2d 317, 320 (R.I. 1992). It is well settled that in ruling on a motion for summary judgment, the motion justice should construe all evidence in the light most favorable to the non-moving party.Sakonnet Point Marina Ass'n v. Bluff Head Corp.,798 A.2d 439, 441 (R.I. 2002); McKinnon v. Rhode Island HospitalTrust National Bank, 713 A.2d 245, 247 (R.I. 1998). If after considering the evidence, the motion justice concludes that there are no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Id. *Page 5 
 III Analysis A Plaintiff's CRMC Application
GIS first asks this Court to decide if Plaintiff has independent standing to pursue his application with the CRMC. Here, no material dispute exists as to whether Plaintiff is entitled to file an application with the CRMC; Plaintiff has previously filed an application with the CRMC, and indisputably has the right to file another application. A dispute exists, however, as to whether this Court can order the CRMC to process Plaintiff's application. The CRMC, in its "Notice to Applicants," states that "[t]he CRMC requires a letter from a local tax assessor stating ownership of the property." The local tax appraisal of Plaintiff's Unit indicates that the assessed value only applies to "improvements" on the Unit, but the appraisal provides no assessed value for the land underlying and surrounding the Unit. Consequently, Plaintiff cannot furnish the CRMC with a letter from the local tax assessor conclusively establishing Plaintiff's ownership of the Limited Common Element land upon which he intends to expand.
Additionally, Section 9-30-11 requires that "when declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration and no declaration shall prejudice the right to the persons who are not parties to the proceeding. . . ." Section 9-30-11; seealso Meyer v. City of Newport, 844 A.2d 148, 152 (R.I. 2004). "A court may not assume subject-matter jurisdiction over a declaratory-judgment action when a plaintiff fails to join all those necessary and indispensable parties who have an actual and essential interest that would be affected by the declaration."Sullivan v. Chafee, 703 A.2d 748, 754 (R.I. 1997). Here, because a declaration entered in Plaintiff's favor would unquestionably *Page 6 
diminish the CRMC's decision-making power, the CRMC has an essential interest in this matter that would be affected by the declaration. Thus, this Court cannot force the CRMC toprocess Plaintiff's application because the CRMC is not a party to this action. Therefore, although Plaintiff is certainly entitled to file his CRMC application, this Court cannot declare that Plaintiff has standing to pursue its application if the CRMC chooses not to process it. Consequently, summary judgment as to this declaration is denied.
 B. Plaintiff's Need To Comply with the Rhode IslandCondominium Act, Master Declaration, and Harbor Houses Declarationprior to Submitting His Application to the CRMC
To sufficiently answer the remaining inquiries, the Court must first address the scope of Plaintiff's expansion rights. To do so, an additional three issues must be determined: 1) whether Plaintiff is permitted and authorized to make improvements or alterations to his Unit in the form of an expansion provided that it complies with all governing statutes and condominium provisions, including § 2.3 of the Master Declaration[8] and § 2.4 of the Harbor Houses *Page 7 
Declaration;[9] 2) whether Plaintiff is permitted to expand his Unit onto a Limited Common Element that is not part of Plaintiff's present Unit; and, if so, 3) whether Plaintiff must comply *Page 8 
with the Act, Sections 34-36.1-2.08 and 34-36.1-2.17(d), which requires him to file an amendment to the Master Declaration, thereby necessitating unanimous consent from all 154 unit owners.
 1 Plaintiff's Right To Make Improvements and Alterations toHis Unit
Section 2.8 of the Harbor Houses Declaration expressly grants unit owners the right to increase the size of the owner's unit and the building containing the unit, subject to several restrictions. The Act, however, does not grant unit owners the same express right to expand one's unit "boundaries." Nonetheless, the provisions of a declaration under which a condominium is created must conform to all statutory requirements, and to the extent that they conflict therewith, the statute must prevail. 15A Am. Jur. 2d Condominium,Etc. § 7 (2009) (citing Winkelman v. Toll,661 So.2d 102 (Fla. Dist. Ct. App. 4th Dist. 1995)). Additionally, § 2.3(a)(i)(D) of the Master Declaration and § 2.4(e) of the Harbor Houses Declaration specifically state that any changes, alterations or construction undertaken by a unit owner must be performed in accordance with the applicable state laws. Thus, in any instance where the Master Declaration or Harbor Houses Declaration conflicts with the Act, Plaintiff must comply with the applicable provisions of the Act rather than the inconsistent provision set forth in the applicable declaration.
The Act permits individual unit owners to make "improvements" or "alterations" to their units so long as such "improvements" or "alterations" do not "impair the structural integrity of the mechanical systems or lessen the support of any portion of the condominium." Section 34-36.1-2.11(1). Further, a unit owner may not change "the appearance of the common elements, or the exterior appearance of a unit or any other portion of the condominium, without permission of *Page 9 
the association. . . ." Section 34-36.1-2.11(2). In other words, an individual unit owner may construct improvements or build any structure wholly within the "boundaries" of a single condominium unit.
Consequently, an individual unit owner's right to construct upon and improve his or her unit does not constitute the exercise of a "development right," which the Act exclusively reserves to "declarants."[10] This is so because improvements made to the interior of a particular unit do not alter any common areas or affect the other unit owners' ownership interest in the condominium. Conversely, a declarant must amend the condominium declaration to exercise a "development right" because "the exercise of such a right changes the legal rights and ownership interests of the other condominium-unit owners." Section 34-36.1-2.10(a). It therefore follows that any improvements or alterations made to a unit by an individual unit owner which extend beyond the unit, as defined by the Act and applicable condominium declaration, would invariably alter common areas and affect the other unit owners' ownership interest in the condominium. Thus, while the Act expressly permits and authorizes Plaintiff to make improvements or alterations exclusively within the Unit's "boundaries," the Act does not automatically grant Plaintiff the absolute right to expand beyond his Unit's "boundaries." Therefore, the Court must next consider whether an individual unit owner has a right to expand his unit onto a Limited Common Element. *Page 10 
 2 Plaintiff's Right To Expand His Unit onto a LimitedCommon Element
A unit's "boundaries" are defined by the Act in § 34-36.1-2.02 and § 2.3(a) of the Harbor Houses Declaration. Both the Act and Harbor Houses Declaration define a unit's "boundaries" as the floors, ceiling, walls, door, and windows of the unit. The Harbor Houses Declaration specifically provides that anything beyond a unit's "boundaries," including "the deck and other exterior portions and surfaces of the Building in which said Unit is located" are not part of the unit, but are Limited Common Elements. See Harbor Houses Declaration, § 2.3(a).
Neither the Master Declaration nor the Harbor Houses Declaration expressly permits a Harbor Houses unit owner to expand his or her unit's "footprint" or "boundaries" onto a Limited Common Element, which is commonly owned by all 154 unit owners. Further, our Supreme Court has yet to address an individual unit owner's right to expand his or her unit's "boundaries" onto a Limited Common Element. The Act states, however, that a unit owner is permitted and authorized to make improvements or alterations to its unit subject to the provisions of the declaration, but such changes may not change the appearance of the common elements without the association's permission. See § 34-36.1-2.11(2). Thus, an individual unit owner may arguably change a Limited Common Element's appearance by expanding his unit's "boundaries" onto the Limited Common Element with the association's approval.
 3 Obligations Associated with Plaintiff's Proposal ToExpand His Unit onto a Limited Common Element *Page 11 
Assuming that Plaintiff is permitted to expand his Unit onto the Limited Common Element surrounding his Unit, the Court must next consider whether Plaintiff is first required to amend the GIS Declaration. The Act provides that a condominium declaration must specify to which unit or units each Limited Common Element is allocated; such allocations may not be altered without the consent of the unit owners whose units are affected. Section 34-36.1-2.08(a). Additionally, a Limited Common Element "may be reallocated by an amendment to the declaration executed by the unit owners between or among whose units the reallocation is made." Section 34-36.1-2.08(b). The Act also mandates, however, that "no amendment may . . . change . . . the allocated interests of a unit, or the uses to which any unit is restricted, in the absence of unanimous consent of the unit owners." Section 34-36.1-2.17(d).
Section 2.3 of the Master Declaration and § 2.4 of the Harbor Houses Declaration differ from the Act, however, and do not require a declaration amendment or unanimous consent from all unit owners when a proposed expansion will alter a unit's allocated interests. Instead, § 2.3 of the Master Declaration only requires a unit owner to receive approval from the Harbor Houses Executive Board before making any alterations or changes to the exterior of the building or increasing the building's size. See Master Declaration, § 2.3(a)(i). Further, if a unit owner's proposed expansion will extend any portion of the building beyond the building's existing "footprint," § 2.3 only requires the unit owner to obtain approval from the Harbor Houses' Executive Board.
Similarly, § 2.4 of the Harbor Houses Declaration permits a unit owner to change or make alterations to the exterior design and arrangement of the Building in which the unit is contained by simply obtaining the prior written consent of the Executive Board.See Harbor Houses Declaration § 2.4(c). Section 2.4 of the Harbor Houses Declaration also specifically *Page 12 
addresses alterations made to Limited Common Elements, and states that a unit owner seeking to make alterations or changes to any Limited Common Element need only obtain the written consent of the Executive Board. See Harbor Houses Declaration § 2.4(g). As previously stated, however, the provisions of a declaration under which a condominium is created must conform to all statutory requirements, and to the extent that they conflict therewith, the statute must prevail. See 15A Am.Jur. 2d Condominium,Etc. § 7 (2009) (citing Winkelman v. Toll,661 So.2d 102 (Fla. Dist. Ct. App. 4th Dist. 1995));see also, Master Declaration at § 2.3(a)(i)(D) (stating that all alterations must be made in accordance with applicable federal, state and local laws); Harbor Houses Declaration at § 2.4(e) (stating that any changes, alterations or construction undertaken by a unit owner must be performed in accordance with the applicable laws). Thus, because the applicable provisions of both the Master Declaration and Harbor Houses Declaration directly conflict with the Act, Plaintiff must comply with the applicable provisions of the Act rather than the expansion provisions set forth in § 2.3 of the Master Declaration and § 2.4 of the Harbor Houses Declaration. Therefore, a unit owner who wishes to permanently take a portion of the Limited Common Elements, thereby necessitating a "reallocation," is required to obtain unanimous consent from all other unit owners to amend the condominium declaration.See Sections 34-36.1-2.08(b), 34-36.1-2.17(d).
Moreover, basic principles of property law also apply to the case at hand. Bonczek v. Helena Place, Inc.,1990 WL 105766, *3 (Del.Ch. 1990) (holding that where a unit owner sought to expand his free-standing unit to include, and build over, land that was part of the common elements, the unit owner was required to obtain unanimous consent from all other unit owners). "No individual or group may occupy, or authorize the occupation of, another person's property to that property owner's exclusion."Id. (citing Loretto v. Teleprompter Manhattan CATVCorp., *Page 13 458 U.S. 419, 435 (1982)). Further, no unit owner may "be deprived of his property right in the condominium development without his consent." Id. Thus, while a unit owner's unit expansion onto a Limited Common Element may not change the percentage interest of a particular unit owner in "the literal or formal sense," it would, nonetheless, "achieve that result by reducing common elements in which all unit owners have an undivided interest."Id. at 5. Consequently, granting one unit owner exclusive use of a common area is sufficient to change the relative interest of the other unit owners who own a percentage interest in that common area. Strauss v. Oyster River Condominium Trust,1992 WL 12153337, *22 (Mass.Land Ct. 1992) (holding that a defendant unit owner's expansion of his unit onto a common area required unanimous consent of all owners for any change in the percentage interest in the common areas);[11] see also Kaplan v.Boudreaux, 410 Mass. 435, 443 (1991); Bonczek,1990 WL 105766, *5 (Del.Ch. 1990) (holding that an undivided interest is an undivided interest in the whole, and when that whole changes, that interest, if not the percent, also changes). Therefore, unanimous consent from all unit owners is necessary to legally enable a unit owner to expand his unit onto a Limited Common Element.
In the instant matter, Plaintiff's Unit is a free-standing building that Plaintiff plans to enlarge to include — and build over — land that is presently part of the Limited Common Element allocated to Plaintiff's Unit for the Unit's exclusive use. If the expansion is approved, that Limited Common Element land, which is commonly owned by all 154 unit owners, would thereby become part of Plaintiff's Unit. Such an expansion would make the land part of a *Page 14 
specific condominium unit belonging to a particular unit owner. Consequently, the proposed expansion would disturb the Declaration's current Limited Common Element allocation.See Section 34-36.1-2.08(a). As a result, the proposed expansion would necessitate a "reallocation" of the remaining Limited Common Element allocated to Plaintiff's Unit and would ultimately decrease each unit owner's percentage interest in all Limited Common Elements.[12] Plaintiff must therefore obtain unanimous consent from all 154 unit owners to amend the GIS Declaration before the affected Limited Common Element can be reallocated. See Section 34-36.1-2.17(d).
Further, in accordance with basic property law principles, Plaintiff is prohibited from permanently occupying the Limited Common Element to the absolute exclusion of the other 154 property owners without their consent. Any expansion of Plaintiff's Unit beyond the current Unit's "footprint" or "boundaries" would infringe upon the current allocation of Limited Common Elements. Specifically, the construction of an addition on a portion of the Limited Common Element that comprises Plaintiff's yard would serve as a permanent occupation of that land, which is commonly owned by all unit owners. Thus, because no unit owner may be deprived of his property right without his consent, consent from all 154 unit owners is necessary. See Bonczek,1990 WL 105766 at *3.
In conclusion, the Master Declaration, the Harbor Houses Declaration, and the Act all afford Plaintiff an absolute right to make improvements or alterations to his unit in the form of an expansion provided that Plaintiff complies with all governing statutes and condominium provisions. The right to make improvements includes a right to construct an addition that may reduce the area of a condominium's Limited Common Element, provided that such an addition does not change the Common Element's appearance without association approval. See *Page 15 
Sections 34-36.1-2.11(2). Here, however, Plaintiff proposes to expand his Unit beyond the Unit's current "footprint" and "boundaries," and onto a Limited Common Element. To do so, Plaintiff is required to adhere to the procedures set forth in the Act, as well as any other non-conflicting provisions set forth in § 2.3 of the Master Declaration and § 2.4 of the Harbor Houses Declaration. Therefore, Plaintiff must obtain unanimous consent from all 154 unit owners to amend the Master Declaration.
In its "Notice to Applicant," the CRMC sets forth the necessary documents that must accompany an application. These documents include both site plans, as well as a copy of the local building permit or a letter from a local building official stating that a building permit will be issued upon receipt of a CRMC permit. Thus, Plaintiff's CRMC application must include proof that his expansion plans conform to all applicable statutes. Specifically, Plaintiff's plans must comply with the Act which requires Plaintiff to obtain the approval of all 154 GIS Unit owners to amend the Master Declaration. The Act also requires Plaintiff to comply with any applicable provisions of § 2.3 of the Master Declaration and § 2.4 of the Harbor Houses Declaration that do not conflict with the Act. See Section 34-38-8 (requiring each unit owner to comply strictly with the covenants, conditions, and restrictions as set forth in the condominium declaration). Therefore, prior to submitting his application to the CRMC, Plaintiff must adhere to the Act — which requires approval from the other 154 unit owners — as well as all non-conflicting provisions of § 2.3 of the Master Declaration and § 2.4 of the Harbor Houses Declaration.
For the foregoing reasons, Plaintiff is not permitted to apply to the CRMC without first receiving the necessary approval required by the Act, as well as by § 2.3 of the Master Declaration, and § 2.4 of the Harbor Houses Declaration. *Page 16 
 III Conclusion
For the foregoing reasons, this Court denies Defendant's Cross-motion for Summary Judgment as to the following declaration: Plaintiff has standing to independently pursue an application with the Coastal Resources Management Council. This Court grants Defendant's Cross-motion for Summary Judgment as to the following declarations: 1) approval of the other 154 GIS unit owners is necessary prior to submission of Plaintiff's application; 2) approval pursuant to the non-conflicting provisions of § 2.3 of the Master Declaration is necessary; 3) approval under the Act, the Master Declaration, and the Harbor Houses Declaration is required prior submission of an application; and 5) other statutes, rules, regulations and documents are applicable to and determinative of the issues raised in this action. An appropriate form of order and judgment shall be presented.
[1] See Section 34-36.1-1.01, et al.
[2] The First Amendment to the Harbor Houses Declaration was adopted on July 20, 1995.
[3] The Second Amendment to the Harbor Houses Declaration was adopted on October 13, 1999.
[4] The Third Amendment to the Harbor Houses Declaration was adopted on November 20, 2000.
[5] The Fourth Amendment to the Harbor Houses Declaration was adopted on September 16, 2004.
[6] The Fifth Amendment to the Harbor Houses Declaration was adopted on October 5, 2005.
[7] Black's Law Dictionary defines the term "footprint" as "[t]he shape of a building's base." Black's Law Dictionary
672 (8th Ed. 2004). Additionally, § 2.4 of the Harbor Houses Declaration defines the term "footprint" as "the foundation of the Building as it existed on January 20, 1988.
[8] Section 2.3 of the amended Master Declaration states, in pertinent part,
 (i)Improvements, alterations or changes may be made to any building or Common Element of Harbor Houses Condominium to the extent permitted by its Declaration as of June 30, 2007. No alterations, change in exterior appearance or increase in the size of any building ("improvements") shall be made that is not first approved by the Harbor Houses Condominium executive board and does not comply with the following:
 (A) the improvements shall not encroach into the yard designated as a Limited Common Element for the adjoining Residence Unit, nor shall the improvements encroach beyond the Limited Common Elements of the Residence Unit that is being improved, altered or changed;
 ***
 (D) the work shall be done in accordance with the applicable Federal, State and local laws in a good and workman like manner free from defective materials;
 ***
 (N) if any proposed improvements, alterations or increases in the size of any building would extend any portion of the building in which such unit is contained beyond the "footprint," so called, of the building as it existed on January 20, 1988 and would significantly diminish the water view of other Residence Units, as viewed from the glass doors/windows/balconies of such other Residence Units, the Owners of not less than two Residence Units which are in reasonable proximity to such proposed improvements, alterations or changes may request in writing review by his/her Residence Condominium Board. If that Board determines that the diminution of the water view is significant, it may, by majority vote of its members, refer the matter for final and binding review by the GIS Board. . . . Sections 2.3(a)(i), 2.3(a)(i)(A); 2.3(a)(i)(D); 2.3(a)(i)(N).
[9] Section 2.4 of the Harbor Houses Declaration, entitled "Alterations" provides in paragraph (c):
 A Unit Owner may, with the prior written consent of the Executive Board, change or make alterations to the exterior design and arrangement of the Building in which his Unit is contained . . . provided that any such change or alteration does not extend any portion of the Building in which said Unit is contained beyond the "footprint," so called, of the Building as it existed on January 20, 1988 . . . [e]xcept as specifically provided in Section 4.2(d) . . . no Unit Owner may make any changes or alterations to the exterior of the Building in which such Unit Owner's Unit is contained, which alterations or changes would extend any portion of the Building beyond the Building's "footprint," without first obtaining the unanimous written consent of all Unit Owners.
Section 2.4, paragraph (e) provides:
 Any changes, alterations or construction undertaken by any Unit Owner pursuant to Sections 2.4(b), (c) and (d) . . . shall be performed only in accordance with all applicable laws, ordinances and regulations and the Unit Owner undertaking any such change, alteration, or construction shall be responsible for obtaining any and all consents, permits and approvals of any person or entity (including without limitation, any governmental or regulatory board, official or agency) necessary in connection with any such change, alteration or construction.
Section 2.4, paragraph (g) states,
 Except as specifically permitted by the Act and this Declaration, no Unit Owner shall make or cause to be made any alterations or changes to any Common Element or Limited Common Element (including, without limitation, the exterior of the Building in which such Unit Owner's Unit is located) without first obtaining the written consent of the Executive Board.
On July 20, 1995, the Harbor Houses Condominium Association adopted the First Declaration to the Harbor Houses Declaration. The First Amendment added § 2.8, entitled "Improvements to Unit," which states in pertinent part,
 A unit owner may construct improvements to increase the size of the Owner's Unit and the Building containing the Unit subject to the following . . . the improvements shall constitute a Limited Common Element for the benefit of such Unit . . . the improvements shall not encroach on the yard designated as a Limited Common Element to the adjoining Unit . . . the improvements shall not increase the foot print of the Unit (inclusive of the exterior walls enclosing the Unit by more than thirty (30%) percent . . . the Association shall increase the Common Expenses charged to the Unit Owner. . . . See Sections 2.8, 2.8(a), 2.8(b), 2.8(c), 2.8(l).
[10] Section 34-36.1-1.03(11) defines a "development right" as "any right or combination of rights reserved by a declarant . . . to . . . [a]dd real estate to a condominium . . . [c]reate units, common elements, or limited common elements within a condominium . . . [s]ubdivide units or convert units into common elements, or . . . [w]ithdraw real estate from a condominium." When addressing unit improvement and expansion rights, the Act "draws a distinction between `development rights' and the right to make improvements or alterations to a unit." America Condominium Ass'n, Inc. v. IDC,Inc., 870 A.2d 434, 438 (R.I. 2005) (citing Sections 34-36.1-1.03(11) and 34-36.1-2.11). A "declarant" is defined as "any person or group of persons acting in concert who: (i) [a]s part of a common promotional plan, offers to dispose of his, her or its interest in a unit not previously disposed of; or (ii) [r]eserves or succeeds to any special declarant right." Section 34-26.1-1.03(9).
[11] This Court is aware that the Massachusetts Legislature subsequently amended its Condominium Statute to expressly state that the designation of a limited common area to an individual unit owner is not deemed to affect or alter the undivided interest of any owner. See Mass. Gen. Laws ch. 183A, § 5(b)(1). Nonetheless,Strauss remains relevant to the instant matter because Rhode Island has yet to adopt a similar statute. In fact, the lack of such a statute is the precise heart of this matter.
[12] Black's Law Dictionary defines the term "allocation" as "[a] designation or apportionment for a specific purpose. . . ."Black's Law Dictionary 83 (8th Ed. 2004). "Allocation" is also defined as "assignment or allotment."Jacobson v. Bowles, 53 F.Supp. 532, 534 (D.C.Tex. 1944).